TAI MUI, Plaintiff-Appellant,

v.

P. A. ESPERDY, as District Director of the Immigration and Naturalization Service for the District of New York, Defendant-Appellee.

CHAN HING and Lai Cho, Plaintiffs-Appellants,

v.

P. A. ESPERDY, as District Director of the Immigration and Naturalization Service for the District of New York, Defendant-Appellee.

WOO CHENG HWA, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

Nos. 133, 162, 154, Dockets 30621, 30622, 30552.

United States Court of Appeals Second Circuit.

Argued Nov. 2, 1966.

Decided Dec. 9, 1966.

Jules E. Coven, New York City (Lebenkoff & Coven, New York City) (Abraham Lebenkoff, New York City, of counsel), for appellants Tai Mui, Chan Hing and Lai Cho.

Martin Burroughs, New York City (Andrew Reiner, New York City), for petitioner Woo Cheng Hwa.

Francis J. Lyons, New York City (Robert M. Morgenthau, U. S. Atty. for Southern District of New York) (James G. Greilsheimer, Sp. Asst. U. S. Atty., of counsel), for appellee and respondent.

Before FRIENDLY, SMITH and FEINBERG, Circuit Judges.

FRIENDLY, Circuit Judge.

These cases present questions, of first impression for us, of the interpretation of the provisions of the Immigration and Nationality Act Amendments of 1965, 79 Stat. 911, 912–13, according certain refugees preferences for lawful admission.

I.

The 1965 statute had "as its primary objective the abolishment of the national origins quota system for the allocation of immigrant visas and the substitution of a new system of allocation based on a system of preferences which extends priorities in the issuance of immigrant visas to close relatives of U. S. citizens and aliens lawfully admitted for permanent residence, to aliens who are members of the professions, arts, or sciences, and to skilled or unskilled alien laborers who are needed in the United States, and to certain refugees." S.Rep. No. 748, 89th Cong., 1st Sess. (1965), in 1965 U.S. Code Cong. & Adm.News, pp. 3329–3330. Section 201(a) as amended now provides that, subject to exceptions not here material, "the number of aliens who may be issued immigrant visas or who may otherwise acquire the status of an alien lawfully admitted to the United States for permanent residence" shall not exceed 170,000 in any fiscal year. Section 203 lists seven categories of aliens subject to these numerical limitations who are entitled to preferences. The first six of these, entitled in the aggregate to 94% of the 170,000 total, are to receive visas from United States consular representatives abroad. Section 203(a) (7) dealing with refugees, with which we are here concerned, establishes a different procedure for the remaining 6%, or 10,200 per year. It prescribes that "Conditional entries shall next be made available by the Attorney General, pursuant to such regulations as he may prescribe * * * to aliens who satisfy an Immigration and Naturalization Service officer at an examination in any non-Communist or non-Communist-dominated country" that they come within the statutory definition of refugee, "Provided, That immigrant visas in a number not exceeding one-half

the number specified in this paragraph may be made available, in lieu of conditional entries of a like number, to such aliens who have been continuously physically present in the United States for a period of at least two years prior to application for adjustment of status."

The further handling of an alien who conditionally entered under § 203(a) (7) was prescribed in § 203(g) and (h). After two years presence, if his conditional entry has not been terminated by the Attorney General and he has not established permanent residence, he must return to the INS for inspection and examination and is dealt with as any other qualified immigrant except that he is excused from the possession of documents required by § 212(a) (20). The 1965 Act made only unimportant amendments to § 245, the provision of the Immigration and Nationality Act dealing generally with the adjustment of status of a nonimmigrant to that of a person admitted for permanent residence. Subsection (a) provides:

"(a) The status of an alien, other than an alien crewman, who was inspected and admitted or paroled into the United States may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is approved."

Subsection (b) directs that upon the approval of an application for adjustment under subsection (a) the Attorney General shall record the alien's lawful admission for permanent residence and the Secretary of State shall reduce by one the number of preference or nonpreference visas authorized by § 203(a) "within the class to which the alien is chargeable, for the fiscal year then current."

The Attorney General issued revised regulations to implement § 203(a) (7).

Those pertinent to conditional entry are 8 C.F.R. § 235.9(a) and (c), 31 F.R. 5118 (1966):

"§ 235.9   Conditional entries.

"(a) *Countries in which applications may be filed.* Pursuant to agreements entered into with the governments of the countries concerned, officers of the Service are authorized to accept applications and to examine the qualifications of applicants for conditional entry under section 203(a) (7) of the Act, in Austria, Belgium, France, Germany, Greece, Italy, and Lebanon. Applications for conditional entry may be filed only by aliens who are physically present within one of the designated countries.

"(b)   *   *   *

"(c) *Application.* A separate application for conditional entry under section 203(a) (7) of the Act shall be executed and submitted by each applicant on Form 1-590 to the officer in charge of the nearest Service office outside the United States. Each applicant under this paragraph shall appear in person before an immigration officer and excepting a child under 14 years of age shall, prior to the adjudication of his application, be interrogated under oath concerning his eligibility for conditional entry into the United States. * * * The approval of an application by an officer in charge outside the United States authorizes the district director at a port of entry to effect the conditional entry of the applicant upon arrival at such port within 4 months after the date of the approval. * * * *"

Those relevant to the adjustment of status proviso are a portion of 8 C.F.R. § 245.1(d), 31 F.R. 535 (1966):

"(d) *Immediate relatives under section 201(b) and preference aliens under section 203(a) (1) through 203 (a) (7).*

" * * * An alien who claims preference status under the proviso to section 203(a) (7) of the Act is not eligible for the benefits of section 245 of

the Act and as provided in § 245.4, unless the District Director has approved the alien's Application for Classification as a Refugee under the Proviso to Section 203(a) (7), Immigration and Nationality Act."

and § 245.4, 31 F.R. 536 (1966):

"§ 245.4 *Adjustment of status under the proviso to section 203(a) (7) of the Act.*

"The provisions of section 245 of the Act and this part shall govern the adjustment of status provided for in the proviso to section 203(a) (7) of the Act. Processing of applications for adjustment under the proviso to section 203(a) (7) and this section shall be initiated in each district in the chronological order in which the applicants last arrived in the United States. An alien who claims he is entitled to a preference status pursuant to the proviso to section 203(a) (7) of the Act shall execute and attach to his application for adjustment of status Form I–590A, Application for Classification as a Refugee under the Proviso to Section 203(a) (7), Immigration and Nationality Act. The determination as to whether an alien is entitled to the claimed preference status shall be made by the district director; no appeal shall lie from his determination." [31 F.R. 536, January 15, 1966].

## II.

Tai Mui had last entered the United States as a crewman on July 31, 1961. He was ordered to be deported to Hong Kong and was scheduled to exercise his privilege of voluntary departure on or before November 1, 1965. After failing to depart and being directed to surrender for deportation, he applied to the New York District Director for a stay of deportation under 8 C.F.R. § 243.4 in order to prosecute an application for adjustment of status under the amended act. The Director denied the application on the basis that § 245 of the Act and 8 C.F.R. § 245.1 rendered a crewman ineligible to avail himself of the proviso to § 203(a) (7) as a preliminary step to adjusting his status. Tai Mui thereupon sued the District Director in the District Court for the Southern District of New York for a judgment declaring that his being a crewman did not deprive him of the benefits of the proviso to § 203(a) (7), that the regulations making him ineligible for such relief on that basis are void, and that a stay of deportation should be granted pending final determination of an application for adjustment of status pursuant to such declaration. Holding that the district court was not deprived of jurisdiction by § 106(a) of the Immigration and Nationality Act vesting the courts of appeals with exclusive jurisdiction for review "of all final orders of deportation heretofore or hereafter made against aliens within the United States pursuant to administrative proceedings under section 242(b) of this Act," Judge Levet sustained the District Director on the merits and granted summary judgment dismissing the complaint, from which Tai Mui appeals.

Chan Hing and Lai Cho, also crewmen, were ordered to be deported to Hong Kong and were given until October 1965 to effect voluntary departure. Having been commanded to surrender for deportation, they applied to the New York District Director for a stay of deportation until their applications for refugee classification under § 203(a) (7) were adjudicated. Admittedly they did not qualify under the two-year requirement of the proviso, since Lai Cho's last entry was on December 11, 1964, and Chan Hing's on April 11, 1965. They contended that, nevertheless, they would be entitled to conditional entry if they could satisfy an INS officer in the United States, concededly a "non-Communist or non-Communist-dominated country," of their refugee status, and that they could then proceed to some other country from which they would enter the United States; or, if this contention should not be accepted, that the Attorney General abused his discretion by failing to place officers of the INS in some country in the Far East where Chinese would stand

a better chance of gaining temporary admission for the purpose of making an application. When the District Director denied their applications, they too sued in the District Court for the Southern District of New York for a declaratory judgment of the invalidity of the regulations and their entitlement to a stay. In their case also Judge Levet held the district court had jurisdiction but dismissed the complaint on the merits, and they appeal.

Woo Cheng Hwa entered the United States as a crewman in June 1963 and was ordered in 1965 to be deported to the Republic of China on Taiwan, being given until April 1, 1966 to depart voluntarily. Having been directed to surrender for deportation, he moved to reopen the deportation proceedings, to adjust his status to that of a permanent resident, contending that he was entitled to this relief by reason of the proviso to § 203 (a) (7) despite his lack of the refugee classification approved by the District Director required by 8 C.F.R. § 245.1(d). Denial by a Special Inquiry Officer and dismissal of his appeal by the Board of Immigration Appeals followed in short order. He here seeks review under § 106(a).

### III.

We must first consider whether the District Court had power to entertain the declaratory judgment actions brought by Tai Mui and by Chan Hing and Lai Cho. The Government concedes it had jurisdiction over the latter but denies it had this in the former, although believing the initial handling of both types of cases by the district court to be preferable from an administrative standpoint.

█ We readily agree that the district court had jurisdiction over the action brought against the District Director by Chan Hing and Lai Cho. The statute makes the jurisdiction of the courts of appeals exclusive only as regards "the judicial review of all final orders of deportation heretofore or hereafter made against aliens within the United States pursuant to administrative proceedings under section 242(b) of this Act." The action did not challenge the deportation orders, and the District Director's refusals of stays under 8 C.F.R. § 243.4, which are all it did challenge, were not made pursuant to administrative proceedings under § 242(b). Jurisdiction of the district court is in no way foreclosed by the construction given the statute in Foti v. Immigration and Naturalization Service, 375 U.S. 217, 84 S.Ct. 306, 11 L.Ed. 2d 281 (1963). The Supreme Court there decided that the statutory language covered "a denial of discretionary relief, made during the same proceedings in which deportability is determined, which effectively terminates the proceeding," 375 U.S. at 224, 84 S.Ct. at 311, a view reinforced by the consideration that "the administrative discretion to grant a suspension of deportation has historically been consistently exercised as an integral part of the proceedings which have led to the issuance of a final deportation order, and discretionary relief, if sought, must be requested prior to or during the deportation hearing," 375 U.S. at 223, 84 S.Ct. at 310, all under § 242(b) to which the statute vesting exclusive jurisdiction in the courts of appeals expressly refers. Neither is district court jurisdiction precluded by the later *per curiam* in Giova v. Rosenberg, 379 U.S. 18, 85 S.Ct. 156, 13 L.Ed.2d 90 (1964), settling in the affirmative what the Court had characterized in *Foti* as the "somewhat different" question "whether § 106(a) extends the exclusive jurisdiction of the Courts of Appeals to include review of orders refusing to reopen deportation proceedings." 375 U.S. at 232, 84 S.Ct. at 315. Examination of the record in that case shows that the Board of Immigration Appeals had entertained Giova's motion to reopen the deportation proceeding to grant him a waiver of a ground of excludability provided in § 212(g) of the Immigration and Nationality Act or in the alternative for suspension of deportation under § 244; its denial of the motion was thus a part of the deportation proceeding itself. *Foti* and *Giova* do not place within the scope of § 106 determinations, such as the one involved here,

which do not attack the deportation order itself but instead seek relief not inconsistent with it. Chan Hing and Lai Cho have made no motions to reopen their deportation proceedings and there was no basis on which they could have done so. Rather, their objective was to obtain "conditional entry" which would allow them to depart from the United States, hopefully to some nearby country, with the assurance that they could immediately make a lawful entry or, failing that, to be allowed to remain here until the INS opened an office to handle conditional entry applications at some country in the Orient to which they would voluntarily depart.

■ The Supreme Court's decisions do not demand or even justify our recasting § 106(a) so as to give the courts of appeals exclusive jurisdiction over all orders made by immigration officers which might affect the deportation of aliens, subject only to the recognized exception for habeas corpus; if Congress had wanted to go that far, presumably it would have known how to say so. We recognize that the Seventh Circuit has taken or at least come close to taking this position, see Roumeliotis v. Immigration and Naturalization Service, 7 Cir., 304 F.2d 453, cert. denied, 371 U.S. 921, 83 S.Ct. 288, 9 L.Ed.2d 230 (1962) [denial of first preference visa and stay of deportation]; Skiftos v. Immigration and Naturalization Service, 7 Cir., 332 F.2d 203 (1964) [denial of first preference visa]; Melone v. Immigration and Naturalization Service, 355 F.2d 533 (7 Cir. 1966) [denial of stay of deportation in order to visit brother confined in mental hospital], and we appreciate that such a view has the merit of avoiding sterile jurisdictional controversy. But we do not feel warranted in going so far beyond the words that Congress

used; indeed, we are already committed against any such broad position. Lam Tat Sin v. Esperdy, 227 F.Supp. 482, 484 & n. 2 (S.D.N.Y.), aff'd without discussion of the point, 334 F.2d 999 (2 Cir.), cert. denied, 379 U.S. 901, 85 S.Ct. 190, 13 L.Ed.2d 176 (1964). See also Samala v. Immigration and Naturalization Service, 336 F.2d 7, 12–13 (5 Cir. 1964); Mendez v. Major, 340 F.2d 128 (8 Cir. 1965). On the precise point here at issue we follow Judge Coolahan's convincing opinion in Cheng Ho Mui and Pun Yi Pan v. Rinaldi, Civ.No. 368–66, D.N.J. (1966).

■ Although these same considerations would seem on their face to settle the jurisdictional issue in Tai Mui's action since he also has never moved to reopen the deportation order or conducted any proceedings under § 242(b), the Government says his case is different because he ought to have followed that route, as Woo Cheng Hwa did.[1] It contends he should have moved to reopen the deportation proceeding for an adjustment of his status despite the Attorney General's regulations, binding upon the Special Inquiry Officer and the Board of Immigration Appeals,[2] which declare ineligible for adjustment of status an alien lacking a refugee classification approved by the District Director whose determination is expressly immunized from review, and the consequent futility of such a motion at the administrative level.

While the jurisdictional question in Tai Mui's case is much closer than in Chan Hing's and Lai Cho's, the Government's contention would take us too far from the statutory language and purpose, and would make the statute something of a trap. Faced with a regulation which barred an application for reopening the deportation order to adjust status in the

1. 8 C.F.R. § 245.2 provides that an application by an alien for adjustment of status "after he has been served with an order to show cause or warrant of arrest shall be made and considered only in proceedings under Part 242 of this chapter."

2. Since the Board exists only by virtue of the Attorney General's regulations, 8

C.F.R. Part 3, it naturally regards itself as bound by them in all respects and will not consider challenges to their validity. Matter of Tzimas, 10 I. & N. Dec. 101 (1962); see Gordon and Rosenfield, Immigration Law and Procedure § 1.10 at 1–50, 1–59 (1966).

absence of a classification approved by the District Director and with a refusal by the latter not subject to administrative appeal, Tai Mui's lawyer did what most attorneys would have regarded as the natural and sensible thing to do; he attempted to remove the roadblock by obtaining a court order that the District Director must consider Tai Mui's application on its merits and without regard to his being a crewman, just as if Tai Mui had sought to regularize status before becoming subject to an order of deportation. Reading 8 C.F.R. § 245.2 in the context of the other provisions applicable in this situation, especially 8 C.F.R. §§ 245.1(d), 245.4, we hold that Tai Mui was not required to go through the motions of requesting to be heard by a Special Inquiry Officer and then appealing to the Board of Immigration Appeals, but was entitled to challenge the District Director's administratively unreviewable refusal in the district court. A different case would be presented if the Attorney General were to place determinations pursuant to the proviso of § 203(a) (7) under the aegis of Special Inquiry Officers with appeals to the Board of Immigration Appeals, see Foti v. Immigration and Naturalization Service, supra, 375 U.S. at 230 n. 16, 84 S.Ct. 306.[3]

IV.

The substantive question raised by Tai Mui's appeal and Woo Cheng Hwa's petition for review is whether the proviso to § 203(a) (7) permitting up to 5100 visas a year to "be made available, in lieu of conditional entries of a like number, to such aliens who have been continuously physically present in the United States for a period of at least two years prior to application for adjustment of status" incorporates the limitation of § 245 making adjustment of status thereunder unavailable to an alien crewman,

or—perhaps more accurately—whether the Attorney General by regulation may so provide. We answer in the affirmative.

While the proviso would have been clearer if language such as "eligible for adjustment of status under the provisions of this Act," had been inserted after "aliens," we are satisfied Congress intended to accord the preference only to aliens who were entitled to have their status adjusted under existing law rather than to direct the Attorney General to create by regulation a new category for the adjustment of the status of other aliens. In this way Congress excluded from the preference, so far as concerns those who could not qualify under some section other than § 245, aliens who had entered illegally and alien crewmen, a group it had characterized as guilty of "frequent abuses of the immigration laws." H.R.Rep.No.2088, 86th Cong. 2d Sess., 2 (1960). That the same 1965 act which included § 203(a) (7) amended § 244 to eliminate the ban on alien crewmen adjusting their status under the far more stringent residence and other requirements of that section while leaving intact the corresponding exclusion in § 245, works against Tai Mui and Woo Cheng Hwa rather than for them. The Senate Committee, in recommending the change in § 244, carefully said it felt "no distinction should be made in the treatment of aliens because of their manner of entry where they meet the other conditions which would qualify them for that form of discretionary relief." S.Rep.No. 748, 89th Cong. 1st Sess. (1965), in 1965 U.S.Code Cong. & Adm.News, pp. 3328, 3339. Moreover, the portion of the Senate Report dealing with § 203(a) (7), after explaining that the proviso permits 5100 of the numbers authorized for refugees to "be used in lieu of conditional entries to adjust the status of refugees who

---

3. These cases point up the desirability of Congress' clarifying this needlessly murky piece of legislation and rescuing lawyers and judges from the fruitless jurisdictional disputes that will continue to plague them until it does, as the writer predicted some years ago. The Gap in Law-making—Judges Who Can't and Legislators Who Won't, 63 Col.L.Rev. 787, 795–796 (1963). Such legislation could well be preceded by an inquiry whether the 1961 Act is producing the expedition that was contemplated.

have been physically present in the United States for 2 years," went on to say, "It is contemplated that such adjustments will be made under section 245 of the Immigration and Nationality Act." Id. at 3341. Although such a gloss is less compelling than if it had been made in connection with a Senate amendment or were a statement in the reports of both houses or of a conference committee, it is entitled to weight nevertheless, see Utah Junk Co. v. Porter, 328 U.S. 39, 42–43, 66 S.Ct. 889, 90 L.Ed. 1071 (1946)—surely as much as floor discussion in one house of an earlier Congress, see Foti v. Immigration and Naturalization Service, supra, 375 U.S. at 223–224, 84 S.Ct. 306, 11 L.Ed.2d 281. Reliance on such an expression is not "an attempted addition to the statute of something which is not there," C. I. R. v. Acker, 361 U.S. 87, 93–94, 80 S.Ct. 144, 4 L.Ed.2d 127, 148 (1959); with § 203(a) (7) susceptible of either of two constructions, the Senate Report confirms that the members of one house of Congress who were most knowledgeable on the subject and the others who read their report considered the bill to have the meaning we would have thought the more likely in any event. The construction urged by the Government leads to no absurd or unfair results; exclusion of alien crewmen from the preference accorded by § 203(a) (7) simply improves the chance of others whom Congress could well have deemed to be more deserving.

V.

As indicated, Chan Hing's and Lai Cho's position is that the regulations dealing with conditional entries, 8 C.F.R. § 235.9, are invalid for failure to list the United States as a non-Communist or non-Communist-dominated country where an alien may apply, be examined, and be granted a conditional entry with the consequent feasibility of his departure to another country from which he can enter the United States. At the very least, the plaintiffs contend, the regulations are arbitrary in listing only countries in Europe and the Middle East[4] and excluding any in the Orient as places where applicants may be examined.

The first branch of the argument is quite unpersuasive. The natural reading of § 203(a) (7) is that it accorded preference to two categories of refugees, those who were abroad and were seeking entry into the United States, and those who had already been here for two years. The "conditional entry" device was designed for the first group, the procedure of making a visa available in lieu of a conditional entry was intended for the second, and the obvious *casus omissus*—refugees here for less than two years—simply did not fall within the preferential scheme. If Congress had intended that refugees within this country not qualifying under the proviso for lack of two years residence should nevertheless be entitled to obtain in the United States the same treatment as those seeking entry from abroad, it would have found some way of saying this less awkward and susceptible to misinterpretation than including the United States under the rubric of "any non-Communist or non-Communist-dominated country." Furthermore, the House and Senate Committees said that the conditional entry procedure was "not unlike the parole procedure utilized during the existence of the so-called Fair Share Act (sec. 212(d) (5)) and it is intended that the procedure remain the same," the new term having been developed in order to avoid "a connotation unfavorable to the alien." H.R.Rep.No.745 at 15, and S.Rep.No.748 at 17, 89th Cong. 1st Sess. (1965), the latter reprinted in 1965 U.S.Code Cong. & Adm.News, pp. 3328, 3335. That statute had provided that the Attorney General "may parole into the United States, pursuant to such regulations as he may prescribe" an alien refugee-escapee who "(1) applies for parole while physically present within the limits of any country which is not Com-

4. Cuban and other western hemisphere refugees are not affected by this since they are "special immigrants" under § 101(a) (27) who are not subject to the numerical limitation of § 203 by express provision of § 201(a). See Gordon and Rosenfield, Immigration Law and Procedure §§ 2.17, 2.20 (1966).

munist, Communist-dominated, or Communist-occupied * * *," 74 Stat. 504 (1960). The regulations promulgated by the Attorney General pursuant to this grant of authority were nearly identical with those challenged by petitioners here, permitting application for parole to be made only to "the nearest office of the Service *in Europe*," which applications were to be approved "by an officer in charge *outside the United States*." 8 C.F.R. § 212.5 (1965) (emphasis added).[5] If we would otherwise have had any doubts as to the consistency of 8 C.F.R. § 235.9 with congressional intent, this would resolve them.

■ Turning to the second branch of the argument, namely, that the regulation is invalid for failure to designate an office in the Far East, we encounter the difficulty that even if we thought the claim well-founded, we could hardly direct the Attorney General to supply the office the plaintiffs want. The only recourse open to the courts would thus appear to be to stay deportation of all Chinese refugees who seek conditional entries until such an office was established or, for those who were eligible, they met the two year test of the proviso—strong medicine, indeed. Before seriously considering any such confrontation with the executive branch, we would require far weightier evidence of arbitrary action than has been presented. A letter from the Legal Adviser of the Department of State to the Assistant Attorney General in charge of the Criminal Division explains:

"Under the Act of July 14, 1960, commonly referred to as the 'Fair Share' refugee law, the examination of refugees who made application for parole was limited to seven countries, namely, Austria, Belgium, France, Germany, Greece, Italy and Lebanon, whose governments had consented, pursuant to an agreement reached with the Department of State, to the presence of United States immigration officers within their respective territories for the purpose of examining applicants for parole into this country as refugees, and also to the return to such country within a period of two years of any refugees found to be statutorily inadmissible into the United States. The Congress was aware of these arrangements when it enacted Section 203(a) (7) of Public Law 89–236, and, at the same time, repealed Sections 1, 2 and 11 of the Act of July 4, 1960. * * * Consequently, the former procedures have been continued in force to facilitate the conditional entry of refugees under Section 203(a) (7). The Secretary of State and the Attorney General have agreed, however, that if it should develop later that any changes in these procedures are desirable, they will be promptly effected upon agreement between the Department of State and the Department of Justice."

Figures for the fiscal year 1966 presented by the Special Assistant United States Attorney show that while of the 3191 aliens who were found qualified for conditional entry in the fiscal year ending June 30, 1966 only five were Chinese, the bulk of aliens adjusted to the status of permanent residents under the proviso were Chinese —3576 out of 4009—so that nearly half the aliens benefiting from the seventh category of preference have been Chinese. While it appears to be true that these were for the most part Chinese who had been admitted under the Hong Kong refugee program before enactment of the 1965 amendments, there is surely no indication that any discrimination against

---

5. *"Parole of aliens into the United States.* * * *

(b) *Refugee-escapees.* A separate application for parole as a refugee-escapee under section 1 of the Act of July 14, 1960, shall be executed and submitted by each applicant on Form I–590 to the officer in charge of the nearest office of the Service in Europe. * * * The approval of an application for parole under section 1 of the Act of July 14, 1960, by an officer in charge outside the United States authorizes the district director at a port of entry to parole the applicant upon arrival at such port within six months after the date of authorization. * * *" 8 C.F.R. § 212.5 (1965).

Chinese refugees has been practiced up to this time.

The orders of Judge Levet dismissing the complaints of Tai Mui and of Chan Hing and Lai Cho are affirmed; Woo Cheng Hwa's petition for review is denied.