**CHENG FAN KWOK, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**CHAN KWAN CHUNG, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**Nos. 16005, 16027.**

United States Court of Appeals
Third Circuit.

Argued March 20, 1967.

Decided Aug. 4, 1967.

Jules E. Coven, Lebenkoff & Coven, New York City, for petitioners.

Merna B. Marshall, Ass't U. S. Atty., Philadelphia, Pa., for respondent.

Before STALEY, Chief Judge, and KALODNER and SMITH, Circuit Judges.

**OPINION OF THE COURT**

STALEY, Chief Judge.

These proceedings were commenced in this court to review decisions of the district director of the Immigration and Naturalization Service in Newark, New Jersey. The district director had denied petitioners' applications for stays of deportation pending disposition of their applications for adjustment of status pursuant to § 203(a) (7) of the Immigration and Nationality Act (hereinafter referred to as the "Act"), 8 U.S.C. § 1153(a) (7) (Supp. II, 1966).

The petitioner in No. 16027, Chan Kwan Chung, a citizen of China, entered the United States on March 29, 1964. As a crewman, he could remain in this country only as long as his vessel was in port but not in excess of 29 days. 8 U.S.C. § 1282(a). He remained longer than permitted, and deportation proceedings were commenced against him in July of 1964.[1] Chung apparently conceded his deportability but sought permission to depart voluntarily. His request was denied. No appeal was lodged with the Board of Immigration Appeals.

Chung was ordered to surrender for deportation to Hong Kong on July 7, 1966. On July 5, two days before he was to be deported, he filed an application for a stay of deportation with the district director in Newark. The reason asserted for the stay was to permit him time to submit an application for adjustment of status pursuant to a recent amendment to the Immigration and Nationality Act, § 203(a) (7). The district director denied the application, stating that under the published regulations of the Service, 8 C.F.R. § 245.4, adjustment of status under § 203(a) (7) is governed by § 245 and that crewmen are excluded from adjusting their status under § 245.

Two issues are presented by these petitions for review. The first is whether this court has jurisdiction to entertain the petitions, and the second is whether crewmen are eligible to adjust their status under § 203(a) (7). We deal first with the question of jurisdiction since a decision on this point adverse to the petitioners would render unnecessary a consideration of the merits of each petition.

Both the petitioners and the Immigration and Naturalization Service urge that this court has exclusive jurisdiction to review the district director's decisions. Our earlier decisions to the contrary in Lam Man Chi v. Bouchard, 314 F.2d 664 (C.A.3, 1963), and Scalzo v. Hurney, 314 F.2d 675 (C.A.3, 1963), should not be accorded any weight in light of our reliance on and the subsequent reversal of the Second Circuit case of Foti v. Immigration and Naturalization, 308 F.2d 779 (1962), rev'd, 375 U.S. 217, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963). The statute, § 106(a) of the Act, which confers jurisdiction on the courts of appeals to review orders of deportation and exclusion provides:

"The procedure prescribed by, and all the provisions of sections 1031–1042 of Title 5, shall apply to, and shall be the sole and exclusive procedure for, the judicial review of all final orders of deportation * * * made against aliens within the United States pursuant to administrative proceedings under section 1252(b) of this title [§ 242(b) of the Act] or comparable provisions of any prior Act * * *." 8 U.S.C. § 1105a(a).

The question before the Supreme Court in the *Foti* case was whether a denial of discretionary relief under § 244(a) (5) of the Act (suspension of deportation) was a "final order of deportation" within the meaning of § 106(a). Premising its conclusion on the legislative history of § 106(a) and its purpose, the Court held that the denial of § 244 (a) (5) relief was reviewable in the court of appeals. The Court said that the purpose of § 106(a) was to "abbreviate the process of judicial review" by creating " 'a single, separate, statutory form of judicial review of administrative orders for the deportation of * * * aliens' ". 375 U.S. at 224–225, 84 S.Ct. at 11 L.Ed.2d 281. The Court also noted that Con-

---

I. The facts in the Kwok case, No. 16005, are similar: Cheng Fan Kwok, a citizen of China, entered the United States as a crewman on November 24, 1965. He was ordered deported on May 16, 1966, and was granted permission to depart voluntarily. He did not depart voluntarily and was ordered to surrender for deportation on June 20, 1966. On that date, he filed an application with the district director for a stay of deportation pending the submission of an application for adjustment of status under § 203 (a) (7). The application for a stay was denied.

gressmen knowledgable in immigration matters had stated in debate that a final order of deportation should include ancillary determinations such as applications for discretionary relief which were made in the same proceeding. Finally, the Court concluded that bifurcation of judicial review—review of the deportation order in the court of appeals and review of the denial of discretionary relief in the district court—was wholly inimical to the purpose and legislative history of the statute.

Though the Supreme Court in *Foti* placed considerable reliance on the fact that applications for discretionary relief are traditionally tried in one and the same proceeding with the rule to show cause why the alien should not be deported, it admitted that in a large percentage of cases deportability is conceded and that the only question before the special inquiry officer is whether the application for discretionary relief should be granted. The Court also mentioned the other types of applications for discretionary relief, in addition to those under § 244(a) (5), which would be reviewable in the courts of appeals:

> " * * * [I]t seems rather clear that all determinations made during and incident to the administrative proceeding conducted by a special inquiry officer, and reviewable together by the Board of Immigration Appeals, such as orders denying voluntary departure pursuant to § 244(e) and orders denying the withholding of deportation under § 243(h), are likewise included within the ambit of exclusive jurisdiction of the Courts of Appeals under § 106(a)." 375 U.S. at 229, 84 S.Ct. at 314.

The Court left open the question of whether the denial of a motion to reopen the deportation proceedings is reviewable by the court of appeals. It subsequently decided that question in the affirmative in a per curiam opinion. Giova v. Rosenberg, 379 U.S. 18, 85 S.Ct.

156, 13 L.Ed.2d 90 (1964), reversing 308 F.2d 347 (C.A.9, 1962).

Since *Foti* and *Giova*, there have been a number of decisions in the courts of appeals and the district courts dealing with the jurisdictional reach of § 106(a). The Seventh Circuit has adhered to its pre-*Foti* decisions of Blagaic v. Flagg, 304 F.2d 623 (C.A.7, 1962), and Roumeliotis v. Immigration and Naturalization Service, 304 F.2d 453 (C.A.7), cert. denied, 371 U.S. 921, 83 S.Ct. 288, 9 L.Ed.2d 230 (1962), which hold that any administrative determination that involves the execution or suspension of the deportation order is ancillary to that order and is reviewable in the court of appeals. Melone v. INS, 355 F.2d 533 (C.A.7, 1966); Skiftos v. INS, 332 F.2d 203 (C.A.7, 1964). The Sixth Circuit also appears to have adopted that construction of the Act. Talavera v. Pederson, 334 F.2d 52 (C.A.6, 1964). The Seventh Circuit's position has, however, been rejected by the Fifth, Eighth and Second Circuits. Samala v. INS, 336 F.2d 7 (C.A.5, 1964); Mendez v. Major, 340 F.2d 128 (C.A.8, 1965); Tai Mui v. Esperdy, 371 F.2d 772 (C.A.2, 1966), cert. denied, 386 U.S. 1017, 87 S.Ct. 1372, 18 L.Ed.2d 454 (1967).[2]

Conflicting interpretations of § 106(a) in the lower courts is exemplified by the division within one district court in this circuit. Judge Coolahan of the district court in New Jersey has held in Cheng Ho Mui v. Rinaldi, 262 F.Supp. 258 (D.N.J.1966), that jurisdiction to review a district director's denial of a stay of deportation is in the district court rather than in the court of appeals. In so holding, he rejected the position taken by two of his colleagues in Wu Chun Hin v. Rinaldi, No. 402–66 (D.N.J., 1966), and Lam Ying Kwan v. Rinaldi, No. 483–66 (D.N.J., 1966).

We agree with the decision of Judge Coolahan and the position advanced by the Fifth, Eighth and Second Circuits. We do not believe that Con-

---

**2.** The Ninth Circuit cases appear to be conflicting. Compare Fong v. INS, 308 F.2d 191 (C.A.9, 1962), with Holz v. INS, 309 F.2d 452 (C.A.9, 1962).

gress by enacting § 106(a) or the Supreme Court by construing that section liberally intended that all adminstrative decisions affecting the deportation of an alien should be reviewable directly and exclusively in the court of appeals. If the Supreme Court had intended that interpretation, it could have so stated in the *Foti* case; but it did not.[3]

■ What the court did in the *Foti* case was to place primary reliance on the function of the special inquiry officer to determine both the question of deportation and the availability of discretionary relief. The Court specifically noted those denials of discretionary relief which would be reviewable in the courts of appeals; and, in a footnote, the Court made, what is for us, the most telling distinction between what is reviewable here and what is not:

"When § 106(a) was enacted, the withholding of deportation under § 243 (h) was *a matter determined by an official other than the special inquiry officer* conducting the deportation hearing * * *. Under revised and currently effective regulations, * * the decision on any § 243(h) request for relief which the alien might wish to make [is] * * * effected in the deportation proceedings and reflected in the final order of deportation. While *presumably denials of § 243(h) relief were not covered by § 106(a) at the time of its enactment,* it does not seem incongruous to assume that such orders, because of the change in administrative regulations making such decisions *an integral part of the deportation proceedings conducted by a special inquiry officer,* are now within the reach of § 106(a)'s judicial review provisions." 375 U.S. at 230 & n. 16, 84 S.Ct. at 314. (Emphasis supplied).

Gleaned from the above, the sole determinants of review are whether the administrative decision was made by the special inquiry officer and was an integral part of the deportation proceedings conducted by him. The result in *Giova* is completely consistent with our analysis of *Foti* since motions to reopen are addressed to the special inquiry officer, 8 C.F.R. §§ 242.22, 103.5, and are part of the deportation proceedings.[4] It is therefore clear that we have no jurisdiction to review the district director's denial of petitioners' applications for stays.

Parenthetically, we note that to adopt the position urged upon us by the parties would provide a broader scope of judicial review of administrative determinations in immigration and naturalization matters than prevails in any other area of governmental adminstrative action While it cannot be disputed that the purpose of § 106(a) was to prevent dilatory tactics frequently employed by counsel for aliens to postpone the inevitable (deportation) as long as possible, we cannot believe that to achieve this end all administrative action affecting deportation, regardless of the official responsible for it, is reviewable exclusively by this court. To say that the denial of a stay by a district director must be reviewed by this court when the regulations, 8 C.F.R. § 243.4, prohibit appeal within the Service itself, is absurd. Finally, we can only add our concurrence to the Second Circuit's conclusion that new legislation is necessary to rescue the courts and lawyers from these fruitless jurisdictional disputes. Tai Mui v. Esperdy, 371 F.2d 778 & n. 3.

The petitions will be dismissed for lack of jurisdiction.

3. The Court noted the conflict among the circuits but did not cite any case with approval. 375 U.S. at 220 & n. 3, 84 S.Ct. at 309.

4. See Wing Wa Lee v. INS, 375 F.2d 723 (C.A.9, 1967), where the court of appeals had jurisdiction to consider the merits of a case identical with the Chung case presently before us. There, the appeal arose out of a denial of a motion to reopen. See also Tai Mui v. Esperdy, 371 F.2d 772.