Isao YAMADA, Mitsu Yamada, Katsumi Yamada and Three Star Products, Ltd., Petitioners,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

No. 21049.

United States Court of Appeals Ninth Circuit.

Oct. 17, 1967.

---

Francisco, Cal., Cecil F. Poole, U. S. Atty., Charles Elmer Collett, Asst. U. S. Atty., San Francisco, Cal., for respondent.

Before POPE, BROWNING, and DUNIWAY, Circuit Judges.

BROWNING, Circuit Judge:

Following a proceeding under section 242(b) of the Immigration and Nationality Act, 8 U.S.C. § 1252(b), a special inquiry officer entered an order finding Isao Yamada[1] deportable under section 241(a) (2) of the Act, 8 U.S.C. § 1251(a) (2), but allowing voluntary departure. This order became administratively final upon dismissal of an appeal to the Board of Immigration Appeals on January 18, 1965.

On March 26, 1965, Three Star Products, Ltd., filed a petition to classify Isao Yamada as a first-preference quota immigrant under section 203(a) (1) (A) of the Act, 8 U.S.C. § 1153(a) (1) (A).[2] The petition was denied by the district director. This order became final upon dismissal of an appeal to the regional commissioner on March 21, 1966.

On June 3, 1966, petitioners sought review of both orders under section 106(a) of the Act, 8 U.S.C. § 1105a(a), which provides for direct review in the Court of Appeals "of all final orders of deportation heretofore or hereafter made against aliens within the United States pursuant to administrative proceedings under section 242(b) of this Act * * *."

Since the deportation order became final more than six months before the filing of the petition for review, our power to review either order depends upon the reviewability under section 106(a) of the order denying Yamada's first-preference quota status.[3]

Robert W. B. Chang, Hoddick, Rothwell & Chang, Honolulu, Hawaii, for petitioners.

Ramsey Clark, Atty. Gen., Washington, D. C., Herman Lum, U. S. Atty., Honolulu, Hawaii, Steve Suffin, Atty., Immigration & Naturalization Service, San

1. Petitioner Mitsu Yamada is Isao Yamada's wife, Katsumi is his daughter, and Three Star Products, Ltd., is his employer. The status of Mitsu and Katsumi depends upon that of Isao.

2. The statute was amended Oct. 3, 1965, P.L. 89–236, § 3, 79 Stat. 912. The comparable provisions are now found in 8 U.S.C. § 1153(a) (3) and (6).

3. If the § 203(a) (1) (A) order is reviewable in this court, our decision in Bregman v. Immigration & Naturalization Service, 351 F.2d 401, 402 (9th Cir. 1965), permits review of the deportation order as well because the § 203(a) (1)

A section 203(a) (1) (A) order is not, literally, a "final order of deportation." Moreover, in this case the order was not "made * * * pursuant to administrative proceedings under section 242(b) of this Act".[4]

We are nonetheless urged to exercise jurisdiction under section 106(a) on the ground that the order denying first-preference quota status to Yamada affected the execution or suspension of the deportation order, and was therefore "ancillary" to that order. It is argued that this construction of section 106(a) would further Congress's strongly expressed purpose to meet the problem of dilatory court proceedings in deportation cases by "the elimination of the previous initial step in obtaining judicial review—a suit in the District Court—and the resulting restriction of review to Courts of Appeals, subject only to the certiorari jurisdiction of this Court." Foti v. Immigration & Naturalization Service, 375 U.S. 217, 225, 84 S.Ct. 306, 312, 11 L.Ed.2d 281 (1963).

The Court of Appeals for the Seventh Circuit has adopted this view, holding that section 106(a) confers ancillary jurisdiction to review orders denying section 203 petitions even where the petition is not filed and the order is not made in a section 242(b) proceeding, and the petition is filed and denied after the order of deportation has become final. Skiftos v. Immigration & Naturalization Service, 332 F.2d 203 (7th Cir. 1964); Roumeliotis v. Immigration & Naturalization Service, 304 F.2d 453 (7th Cir. 1962). Cf. Melone v. Immigration & Naturalization Service, 355 F.2d 533 (7th Cir. 1966); Talavera v. Pederson, 334 F.2d 52, 56 (6th Cir. 1964). The Courts of

Appeals for the Second and Third Circuits have held to the contrary. Li Cheung v. Esperdy, 377 F.2d 819 (2d Cir. 1967); Tai Mui v. Esperdy, 371 F.2d 772, 776–78 (2d Cir. 1966); Cheng Fan Kwok v. Immigration & Naturalization Service, 381 F.2d 542 (3d Cir. 1967) (decided August 4, 1967). See also Kirsten-Sanders Dental Laboratory, Inc. v. Sahli, 348 F.2d 442 (6th Cir. 1965).

If we were satisfied that Congress intended the result reached by the Court of Appeals for the Seventh Circuit, we would agree that the language of section 106(a) does not necessarily bar it. The grant of jurisdiction to review final deportation orders made in section 242(b) proceedings could reasonably be taken to imply power to review other orders directly affecting the execution or suspension of the orders specifically mentioned.

However, there is reason to believe that the express limitation of section 106(a) review to orders made in the course of the section 242(b) deportation proceedings was deliberate.

In Foti the Supreme Court repeatedly emphasized that the order which the Court there held reviewable under section 106(a)—an order denying suspension of deportation—was made in the course of a section 242(b) proceeding (375 U.S. at 221, 222–223, 224, 226, 228, 229–30, 231, 232, 84 S.Ct. 306), and the Court assumed that if the order had not been made in a section 242(b) proceeding it would not have been subject to section 106(a) review. 375 U.S. at 229, 230 n. 16, 84 S.Ct. 306.

The colloquy on the floor of the House of Representatives to which the Supreme Court referred in Foti (375 U.S. at 223–224, 84 S.Ct. 306) indicates that Congress

(A) application was filed with the district director less than six months after the deportation order became final and the petition for review was filed in this court less than six months after the order denying first-preference quota status became final. But see Chul Hi Kim v. United States, 357 F.2d 904, 906–907 (7th Cir. 1966).

4. Compare Hitai v. Immigration & Naturalization Service, 343 F.2d 466 (2d Cir.

1965), in which an adjustment of status from that of "bona fide nonimmigrant" to that of "alien lawfully admitted for permanent residence" under § 245(a) of the Act was sought in a § 242(b) proceeding. The application was denied on the ground that petitioner was not "eligible to receive an immigrant visa" as required by § 245(a). The denial was reviewed by the Court of Appeals under § 106(a).

understood that only decisions made in section 242(b) proceedings came within section 106(a). Representative Moore, co-sponsor of the bill under discussion, thought (mistakenly) that decisions regarding discretionary relief were not made in section 242(b) proceedings. He indicated that therefore such decisions would not be subject to section 106(a). He stated that the problems thus created could be met by "a change in the present administrative practice of considering the issues of deportability and suspension of deportation piecemeal. There is no reason why the Immigration Service could not change its regulations to permit contemporaneous court consideration of deportability and administrative application for relief." 105 Cong.Rec. 12728.

In commenting upon the matter shortly thereafter, Representative Walter did not dispute Representative Moore's assumption that only orders made in deportation proceedings came within the proposed statute. Representative Walter recognized, however, that applications for discretionary relief were in fact considered in deportation proceedings under the existing regulations, and stated that section 106(a) "applies to the final administrative adjudication of the applications for suspension of deportation just as it would apply to any other issue *brought up in deportation proceedings.*" 105 Cong.Rec. 12728. (Emphasis added.)

A reason for confining section 106(a) review to matters determined in the deportation proceeding itself is suggested in *Foti.* The Court pointed out that the administrative regulations which provided for the determination of petitions for suspension of deportation as an integral part of a section 242(b) proceeding also provided that such "discretionary relief, if sought, *must be requested prior to or during the deportation hearing.*" 375 U. S. at 223, 84 S.Ct. at 310. (Emphasis added.) This administrative requirement, known to Congress, served to prevent prolongation of the administrative process by undue delay in seeking discretionary relief from deportation on any of the various possible grounds.

Petitions to reopen, denial of which the Court held reviewable under section 104 (a) in Giova v. Rosenberg, 379 U.S. 18, 85 S.Ct. 156, 13 L.Ed.2d 90 (1964),[5] are also protected from abuse by the regulations governing section 242(b) proceedings. Under these regulations a motion to reopen cannot be granted unless the evidence sought to be offered was not available and could not have been discovered or presented at the hearing; and such a motion cannot be granted to allow an application for any form of relief obtainable in a section 242(b) proceeding "if respondent's right to make such application was fully explained to him by the special inquiry officer and he was af-

---

5. See also Wing Wa Lee v. Immigration & Naturalization Service, 375 F.2d 723, 724 (9th Cir. 1967); Tai Mui v. Esperdy, 371 F.2d 772, 778 (2d Cir. 1966); Bregman v. Immigration & Naturalization Service, 351 F.2d 401, 402 (9th Cir. 1965).

A motion to reopen is considered by a special inquiry officer and is treated by the regulations as part of the deportation proceeding (8 C.F.R. § 242.22). See Tai Mui v. Esperdy, 371 F.2d 772, 776 (2d Cir. 1966). In its brief submitted to the Supreme Court in *Giova*, the government stated (pp. 17–18):

The denial of a motion to reopen is made by the same officer who entered the final order of deportation—or, if the order was appealed, as here, to the Board of Immigration Appeals, then by that body, which, by its decision dismissing the appeal, in effect endorsed the deportation order and assumed responsibility for it—and is directly linked with the original proceedings out of which the deportation order arose. For these reasons it would be artificially literal, in the government's view, to attempt to distinguish, for purposes of Section 106(a), between the final order proper and the denial of a motion to reopen the proceedings. In other words, an order declining to reopen the proceedings is so intimately and immediately associated with the principal order (the final order of deportation) that it would be pointless to require that the subsidiary directive be treated otherwise than as an adjunct of the principal order—comparable to the denial of a motion for rehearing or reconsideration. (Footnotes omitted.)

forded an opportunity to do so at the hearing, unless circumstances have arisen thereafter on the basis of which the request is being made." 8 C.F.R. § 242.22.

Congress sought to eliminate the delay and wasteful duplication involved in judicial review of the same order by both a district court and a court of appeals. But Congress was also concerned with the delay which resulted from multiple court proceedings. The attention of the House was called to an instance in which an alien had "resorted to the courts, appealing from orders in the neighborhood of 35 times." 105 Cong.Rec. 12725. See also H.R. No. 1086, 2 U.S.Code Cong. & Admin.News, 87th Cong., 1st Sess. 1961, 2967–68. The statement that the overall purpose of the new statute was "to create a *single*, separate, statutory form of judicial review of administrative orders for the deportation and exclusion of aliens * * *." (H.R. No. 1086, supra, 2966 (emphasis added) is to be read in the light of this concern. It was to meet this problem, also, that subsection (a) of section 106, providing for review of the final order in a deportation proceeding, was supplemented by provisions in subsection (c) requiring exhaustion of administrative remedies and forbidding repeated judicial review of an order on grounds which could have been effectively raised in the initial judicial review proceeding.

It seems fair to assume from the statutory language, legislative history, and administrative context that Congress visualized a single administrative proceeding in which all questions relating to an alien's deportation would be raised and resolved, followed by a single petition in a court of appeals for judicial review both of the ultimate question of deportation and of all of the subsidiary questions upon which it might depend.

It is true that this scheme depends upon the existence of administrative regulations which include within section 242 (b) proceedings all issues which might affect deportation. Congress made no effort to catalogue such issues. The administrative rule-making process is better suited to that task. Representative Moore's comments reflected an expectation that administrative rule-making would be employed for this purpose, and the Supreme Court approvingly noted that this had in fact occurred after the enactment of section 106(a). See 375 U.S. at 230 n. 16.[6] The rule-making process provides a ready means to close the gap which this and similar cases have disclosed. Tai Mui v. Esperdy, 371 F. 2d 772, 778 (2d Cir. 1966).

The same result could not be accomplished simply by expanding the coverage of section 106(a), for that might well lead either to successive review proceedings in the Court of Appeals, with successive automatic stays of deportation (8 U. S.C. § 1105a(a) (3)), or, as this case demonstrates, to judicial review long delayed by consecutive consideration of possible grounds for relief from deportation following the conclusion of the deportation hearing itself.[7]

The petition for review is dismissed for want of jurisdiction.

---

6. Current regulations provide that in a § 242(b) proceeding the respondent may apply to the special inquiry officer for suspension of deportation under § 244 (a) of the Act, for adjustment of status under § 245 of the Act, or for creation of a record of lawful admission for permanent residence under § 249 of the Act (8 C.F.R. § 242.17(a)); for voluntary departure in lieu of deportation pursuant to § 244(e) of the Act (8 C.F.R. § 242.17 (b)); or for temporary withholding of deportation pursuant to § 243(a) of the Act (8 C.F.R. § 242.17(c)).

7. Orders made in advance of the deportation proceedings which determine the alien's deportability as a matter of substance may stand on a different footing. Although it has been held that such orders are not independently reviewable under § 106(a), if no deportation order is in fact entered [Martin v. Gardner, 378 F.2d 352 (7th Cir. 1967); Mendez v. Major, 340 F.2d 128, 131 (8th Cir. 1965); cf. Samala v. Immigration & Naturalization Service, 336 F.2d 7, 12–13 (5th Cir. 1964)], familiar general principles would support review of all preliminary and subsidiary determinations in connection with review of a deportation order which rested upon them.