Ricardo Vallejo SAMALA, Petitioner,

v.

IMMIGRATION AND NATURALIZA-TION SERVICE, Respondent.

No. 20777.

United States Court of Appeals
Fifth Circuit.

Aug. 26, 1964.

Lafayette L. Shelley, C. Hobart Villar, Pensacola, Fla., for petitioner.

L. Howard McCurdy, Jr., Asst. U. S. Atty., John C. Ciolino, Asst. U. S. Atty., New Orleans, La., Kenneth C. Shelver, Washington, D. C., Herbert J. Miller, Jr., Asst. Atty. Gen., Don R. Bennett, Criminal Division, Department of Justice, Washington, D..C., for respondent.

Before MAGRUDER,* JONES and GEWIN, Circuit Judges.

GEWIN, Circuit Judge..

The petition in this case requests review of an order of deportation and also of certain administrative action taken by the District Director of Immigration and Naturalization prior to the deportation hearing. The petitioner, Ricardo Vallejo Samala, was admitted to the United States on August 30, 1959, as an exchange visitor under the United States Information and Educational Exchange Act of 1948.[1] Pursuant to that legislation, petitioner was entitled to remain in the United States as a non-immigrant alien for one year from the date he entered, or until August 30, 1960.

---

* Senior Circuit Judge of the First Circuit, sitting by designation.

1. 62 Stat. 6 (1948). The 1948 Act was superseded by the Mutual Educational and Cultural Exchange Act of 1961, 75 Stat. 527, codified in scattered sections of 8 U.S.C.A., 22 U.S.C.A., and 26 U.S.C.A.

After petitioner entered this country, he married an American citizen. The Information and Educational Exchange Act, under which petitioner was admitted to the United States, provided:

"No person admitted as an exchange visitor under this section * * * shall be eligible to apply for an immigrant visa, * * * or for adjustment of status to that of an alien, lawfully admitted for permanent residence, until it is established that such person has resided and been physically present in a cooperating country * * * for an aggregate of at least two years following departure from the United States."[2]

Although petitioner could not satisfy this foreign residence requirement and thus was ineligible for a change of his non-immigrant status, the regulations of the Immigration and Naturalization Service permitted waivers in certain circumstances.[3] Some time during the spring or summer of 1961, petitioner, having overstayed the period for which he was admitted to this country, applied to the District Director of the Immigration and Naturalization Service in Miami for such a waiver. This request was ultimately denied on March 6, 1962, by the Assistant District Director for Travel Control, because petitioner's wife had obtained a decree of divorce in the Court of Record of Escambia County, Florida, on September 22, 1961. The divorce rendered petitioner ineligible for waiver under the regulations of the Immigration and Naturalization Service. Petitioner was also notified on the same date, that his nonimmigrant status had terminated, and he was asked to depart from the United States by July 30, 1962.

However, on February 21, 1962, petitioner had married Charlotte Gail Ward, an American citizen, and a child was born to them on September 2, 1962. The Immigration and Naturalization Service informed petitioner that his remarriage made him once again eligible to apply for a waiver of the two-year foreign residence requirement. Under a 1961 amendment which added Section 212(e) to the Immigration and Nationality Act of 1952, a waiver was now available in cases of "exceptional hardship" to the alien's spouse or child.[4] On August 30, 1962, petitioner therefore filed a second application for waiver of the two-year foreign residence requirement, this time under the new § 212(e). After consideration of the petitioner's situation, the District Director concluded that he had not made out a case of "exceptional hardship" sufficient to make him eligible for such a waiver. The petitioner was notified by letter dated November 2, 1962, that the District Director had decided not to recommend that a waiver be granted in his case.

Since petitioner had overstayed the original period for which he was admitted without having obtained any extensions of that period, he had been subject to deportation since August 30, 1960.[5] Hence, on February 14, 1963, deportation proceedings were instituted by an order to show cause served upon petitioner at Pensacola, Florida. He was directed to appear before a special inquiry officer at Jacksonville, Florida, for a deportation hearing. At the hearing, which was held on April 3, 1963, the special inquiry officer, in an oral decision, found that petitioner was deportable as charged, but granted his application for the privilege of departing the country voluntarily in lieu of deporta-

2. 62 Stat. 7 (1948), as amended by 66 Stat. 276 (1952) and 70 Stat. 241 (1956).

3. See 22 C.F.R. § 63.6(e).

4. 8 U.S.C.A. § 1182(e) (Supp.1963). Under this section, it is first necessary that the alien apply to the Immigration and Naturalization Service for a recommendation that the Attorney General grant a waiver. Then the Attorney General may grant the waiver in his discretion. Hence, the Immigration Service initially passes upon eligibility for waiver by applying the "exceptional hardship" standard contained in § 212(e).

5. See 8 U.S.C.A. § 1251(a) (2).

tion.[6] The petitioner was notified by the District Director in a letter dated April 15, 1963, that he had until May 15, 1963, to depart voluntarily in lieu of deportation. This time was extended twice by the District Director at the request of petitioner's counsel; first, to June 15, 1963, and later to August 15, 1963. On August 14, 1963, the instant petition was filed in this Court.

Petitioner has made no previous attempt to obtain review of the decision that he was ineligible for waiver under § 212(e). Furthermore, although he was notified of his right to appeal the deportation order to the Board of Immigration Appeals within ten days after the special inquiry officer's decision was rendered, he did not exercise that right of appeal.

This petition seeks review, under section 106(a) of the Immigration and Nationality Act, 8 U.S.C.A. § 1105a (Supp. 1963), of the deportation proceedings before the special inquiry officer and also of the decision of the District Director of Immigration and Naturalization that the petitioner was not eligible for a waiver of the two-year foreign residence requirement, because he had not made out a case which satisfied the "exceptional hardship" standard set forth in § 212 (e), 8 U.S.C.A. § 1182(e) (Supp.1963). Petitioner alleges that certain features of the deportation hearing constituted a denial of due process, and he attacks the District Director's denial of his application for a waiver on the ground that such denial was an abuse of administrative discretion. Since we believe this Court does not have jurisdiction to review the actions of either the special inquiry officer or the District Director, it is unnecessary to state in detail the contentions of the petitioner on the merits of his case.

Prior to 1961, judicial review of deportation orders, orders suspending deportation, and refusals to reopen deportation hearings, was governed by 5 U.S. C.A. § 1009, which necessitated initial review in the district courts with an appeal to the courts of appeals. In 1961 Congress, concerned with the dilatory tactics employed by many persons in deportation matters, amended section 106 of the Immigration and Nationality Act to eliminate the necessity of district court review in some circumstances. Section 106 of the Immigration and Nationality Act, 8 U.S.C.A. § 1105a, now provides for initial review in the circuit courts of appeals of "all final orders of deportation heretofore or hereafter made against aliens within the United States pursuant to administrative proceedings under section 1252(b) of this title * * *" It is further provided in 8 U.S.C.A. § 1105a(c) that "An order of deportation or of exclusion shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of right under the immigration laws and regulations * * *"

█ █  Therefore, it is clear that petitioner must demonstrate to this Court that he has exhausted all administrative channels of review which are available to him of right or that these administrative remedies have been effectively denied to him in some manner. Title 8 of the Code of Federal Regulations provides:

"§ 242.20. *Finality of order.* The order of the special inquiry officer shall be final except when the case is certified to the Board as provided in Part 3 of this chapter or an appeal is taken to the Board by the respondent or the trial attorney".

"§ 242.21. *Appeals.* Pursuant to Part 3 of this chapter *an appeal shall lie from a decision of a special inquiry officer under this part to the Board of Immigration Appeals.* An

6. 8 U.S.C.A. § 1254(e) (Supp.1963), provides:

"The Attorney General may, in his discretion, permit any alien under deportation proceedings * * * to depart voluntarily * * * in lieu of deportation if such alien shall establish to the satisfaction of the Attorney General that he is, and has been, a person of good moral character. * * *"

appeal shall be taken within ten days after the mailing of a written decision, or the stating of an oral decision, or the service of a summary decision on Form I–38 or Form I–39. The reasons for the appeal shall be stated briefly in the Notice of Appeal, Form I–290A; failure to do so may constitute a ground for dismissal of the appeal by the Board." (Emphasis added.)

In the hearing before the special inquiry officer, it was made emphatically clear to petitioner that he had a right to appeal the deportation order to the Board of Immigration Appeals within ten days after its rendition. Petitioner was even given an appeal form, partially filled out, for his use should he decide to appeal.[7] The jurisdictional requirement that administrative remedies be exhausted is unambiguous and has clearly not been complied with in this case. See Rodriguez-De Leon v. Immig. & Nat. Service, 9 Cir. 1963, 324 F.2d 311; Murillo-Aguilera v. Immig. & Nat. Service, 9 Cir. 1963, 313 F.2d 141; Mai Kai Fong v. Immig. & Nat. Service, 9 Cir. 1962, 305 F.2d 239; Siaba-Fernandez v. Rosenberg, 9 Cir. 1962, 302 F.2d 139.

Petitioner attempts to circumvent the requirements of Section 106(c), however, by asserting that he was effectively precluded from pursuing his administrative remedies. His primary contention is that he was denied the assistance of counsel in the deportation hearing, and thus was not afforded a real opportunity to pursue further remedies.

However, at the hearing the following colloquy occurred between the Special Inquiry Officer and the Petitioner:

"Q. The laws of this country state that, if you wish, you have a right to be represented by an attorney or by any other person who is permitted to appear in a hearing before me. However, the Government of the United States does not provide you with any attorney or representative and it does not pay the fee that any attorney or representative might charge. If you should wish such representation you would have to make arrangements to obtain the services of a representative and make arrangements to pay any fee that they would charge. Do you understand what I have said?

"A. Yes.

"Q. Do you wish to have such representation at this hearing?

"A. I wish the Government to represent me.

"Q. No, the Government does not represent you. You have to make your own arrangements. The Government, if it wants to, will have a representative, Mr. Monsanto, but he will not represent you.

"A. Well, frankly, I did try to get a lawyer for this case, but I found out I can't afford his fee. So I just decided to go ahead.

"Q. In other words, you wish to go ahead without a lawyer?

"A. Yes."

---

7. The following is taken from the transcript of the deportation proceedings:

"Q. You have the right, if you wish, to take an appeal from my order to the Board of Immigration Appeals in Washington, D. C., or you can accept my order. Which do you prefer to do?

"A. I can't tell you right now until I see how much time they will give me.

"Q. I can't tell you that now. As I say in my order, the District Director fixes the time. You have the right to take an appeal from my order or you can wait ten days within which to decide to appeal from my order. Which do you prefer?

"A. Well, do I have to appeal?

"Q. No, you do not have to appeal. On the other hand, you do not have to decide today whether to appeal or not. This is entirely up to you. Do you want to wait ten days to decide whether to appeal or not?

"A. I will wait.

"Q. You want to wait the ten days?

"A. Yes, sir.

"Q. Very well. I will give you the necessary papers which you can execute and return to me if you decide to appeal my decision."

The record indicates that petitioner is a medical doctor, with a good command of the English language. It seems plain from the above dialogue that he clearly understood that he had a right to obtain the assistance of counsel in the deportation hearing and that he intelligently waived that right. Although petitioner is a resident physician at Escambia General Hospital in Pensacola and has a family to support, he does not assert that he is an indigent. In the circumstances set forth above, we do not feel that petitioner has demonstrated a preclusion of his administrative remedies because of a denial of representation by counsel.[8]

Also at issue in this case is our jurisdiction to review the refusal of the District Director to recommend that the Attorney General grant petitioner a waiver of the two-year foreign residence requirement pursuant to Section 212(e). Of course, if, as petitioner argues, "the denial of his application for waiver is such an inseparable part of the record upon which Samala's deportation order is based"[9] that it is reviewable as a part of the deportation order, this Court's jurisdiction is foreclosed for the reasons stated above.

However, we are still faced with the question whether a denial of relief under Section 212(e) is reviewable initially by courts of appeals under Section 106(a) as a "final order of deportation" even though the deportation order itself is nonreviewable. This necessitates an analysis of the Supreme Court's decision in Foti v. Immig. & Nat. Service, 375 U.S. 217, 84 S.Ct. 306, 11 L.Ed. 2d 281 (1963), which resolved a division among the circuit courts as to the reviewability of discretionary determinations of the Attorney General refusing to suspend a deportation order under § 244(a) (5) of the Immigration and Nationality Act, 8 U.S.C.A. § 1254(a) (5). In holding that the congressional purpose in enacting section 106(a) indicated that discretionary refusals to suspend deportation should be reviewable initially by courts of appeals, the Court stated, 84 S.Ct. at 311, 11 L.Ed.2d at 287:

> "It can hardly be contended that the meaning of the phrase 'final orders of deportation' is so clear and unambiguous as to be susceptible of only a narrow interpretation confined solely to determinations of deportability. If anything, the literal language would appear to include a denial of discretionary relief, made during the same proceedings in which deportability is determined, which effectively terminates the proceeding. * * * The fundamental purpose behind § 106(a) was to abbreviate the process of judicial review of deportation orders in order to frustrate certain practices which had come to the attention of Congress, whereby persons subject to deportation were forestalling departure by dilatory tactics in the courts."

Although the Court in Foti viewed the legislative history of section 106(a) as compelling a broad construction of its provisions, a fair reading of the opinion does not indicate an intention to include within the ambit of section 106(a) all discretionary determinations relating in any way to deportation matters. The language of the opinion indicates that section 106(a) includes final deportation orders and any discretionary decisions which are ancillary to that deportation order and which are made dur-

---

8. The show cause order was served on the petitioner on February 14, 1963, and directed his appearance in Jacksonville, Florida, on March 8, 1963. The deportation order was then stayed until April 3, 1963. The petition for review was not filed until more than 90 days after the deportation hearing. The petitioner obtained legal counsel who obtained two different temporary stays of deportation. At no time prior to the filing of the petition for review was any complaint made with respect to the administrative action taken. Petitioner was represented by counsel in this Court, who filed briefs and made oral argument.

9. Brief for Petitioner, p. 4.

ing the deportation proceedings. The Court suggests that section 106(a) would probably comprehend not only refusals to suspend deportation under § 244(a)(5), but also orders denying voluntary departure under § 244(e) and orders denying the withholding of deportation under § 243(h). The Supreme Court presently has before it the question whether orders refusing to reopen deportation proceedings are also reviewable under section 106(a).[10] Such orders are not issued during the deportation proceedings under § 242(b).

Even under the liberal interpretation called for by Foti, it is difficult to see how section 106(a) can be expanded to include a denial by the District Director of an application for a waiver under section 212(e) which occurred prior to the institution of deportation proceedings. The special inquiry officer, who is empowered to conduct deportation hearings, has no jurisdiction to pass upon § 212(e) requests. Although we realize that the result of the application for a waiver affects the deportation order in the sense that a grant of waiver by the Attorney General, coupled with the issuance of an immigrant visa, would render petitioner invulnerable to deportation, the denial of a waiver in this case is really separate and distinct from the deportation proceedings. Petitioner has been subject to deportation since August 30, 1960, and the denial of his application for a waiver merely constituted a refusal by the immigration authorities to alter that status. We are aware of the congressional policy evidenced by section 106(a) of thwarting dilatory tactics in deportation matters, but we do not regard the language of section 106(a) as manifesting a congressional intent to create exclusive jurisdiction in the courts of appeals to review all denials of waiver requests under section 212(e).

Since the decision in Foti, two courts of appeals have rendered decisions which may have the effect of extending the scope of section 106 review to the situation before us. See Talavera v. Pederson, 6 Cir. 1964, 334 F.2d 52; and Skiftos v. Immigration and Naturalization Service, 7 Cir. 1964, 332 F. 2d 203. In both of those cases the applications to the Attorney General for discretionary relief were made subsequent to the entry of an order of deportation and thus may have been so closely related to the deportation order itself as to come within the ambit of section 106. However, to the extent that they would extend the scope of section 106(a) to include review of a section 212(e) denial which was made prior to and entirely separate from any deportation proceedings, we disapprove of those decisions.

There is no merit to petitioner's further contention that form I-294, mailed to him subsequent to the decision of the special inquiry officer, but prior to the expiration of the period during which he was allowed to depart voluntarily, in some manner constituted a denial of due process. Form I-294 is merely a routine designation by the District Director of the country to which the alien is to be deported. It does not constitute a deportation order and contains a notation recognizing that no deportation order becomes effective until the expiration of any voluntary departure period.

Since this Court does not have jurisdiction to review either the deportation proceedings or the denial of petitioner's application for waiver under section 212 (e), the petition for review is hereby

Denied.

---

10. Giova v. Rosenberg, 9 Cir. 1962, 308 F.2d 347, cert. granted 375 U.S. 964, 84 S.Ct. 491, 11 L.Ed.2d 414 (1964).