Francesco **FERRANTE**, Petitioner,

v.

**IMMIGRATION AND NATURALIZA-
TION SERVICE**, Respondent.

Francesco **FERRANTE** and **Kathy**
Ferrante, Petitioners,

v.

**IMMIGRATION AND NATURALIZA-
TION SERVICE**, Respondent.

Nos. 16658, 17854.

United States Court of Appeals
Sixth Circuit.

Feb. 7, 1968.

Rehearing Denied Sept. 12, 1968.

Henry C. Lavine, Cleveland, Ohio, for petitioners.

Paul Nejelski, Atty., Dept. of Justice, Washington, D. C., for respondent; Joseph P. Kinneary, U. S. Atty., Charles G. Heyd, Asst. U. S. Atty., Cincinnati,

Ohio, on brief; Maurice A. Roberts, Atty., Dept. of Justice, Robert M. Draper, U. S. Atty., Cincinnati, Ohio, of counsel.

Before McCREE and COMBS, Circuit Judges, and CECIL, Senior Circuit Judge.

CECIL, Senior Circuit Judge.

These appeals were consolidated and involve the deportable status of one Francesco Ferrante, a citizen of Italy. The appeal in No. 16658, Francesco Ferrante, Petitioner v. Immigration and Naturalization Service, Respondent, is from a decision of the Board of Appeals of May 19, 1965, denying the claim of the petitioner that a previous order (June 26, 1964) of rescission of adjustment of status be vacated and dismissing the appeal from the order of deportation of the Special Inquiry Officer (December 28, 1964).

In No. 17854, Francesco Ferrante and Kathy Ferrante, Petitioners, appeal from a decision (March 13, 1967) of the Board of Immigration Appeals affirming the order of November 18, 1966, of the District Director of the Immigration and Naturalization Service, Cleveland District, revoking the approval of the visa petition granted on September 13, 1966, according "immediate relative" status to Francesco as the spouse of an American citizen.

The facts and the history of the proceedings are as follows: Francesco Ferrante was born in and is a citizen of Italy. On August 22, 1960, at the age of 22, petitioner entered this country through the port of New York. He was admitted as a nonimmigrant visitor for pleasure with a visa valid until May 22, 1961.

On February 22, 1961, petitioner entered into a ceremonial marriage in Wooster, Ohio, with Ruth Moore, a United States citizen. On May 17, 1961, the Cleveland office of the Immigration and Naturalization Service approved Ruth's petition to accord Francesco nonquota status as a husband of a United States citizen.[1] Francesco's petition to adjust his status to that of a permanent resident pursuant to former Section 1255(a), Title 8, U.S.C. was approved on November 7, 1961.[2] Francesco was awarded a divorce from Ruth on June 1, 1962, by the Court of Common Pleas of Stark County, Ohio. He was personally served, on February 4, 1963, with notice that the Immigration and Naturalization Service intended to rescind his permanent resident status because his marriage to Ruth was entered into for the sole purpose of enabling Francesco to obtain permanent residence status and not with the intent to establish a valid and subsisting marriage.

Three hearings were held before a Special Inquiry Officer of the Immigration and Naturalization Service in which Francesco, assisted by legal counsel, contested the intended rescission of status. The evidence presented was contradictory and may be summarized as follows: Ruth is 16 years older than Francesco. At the time of the hearings, Ruth was admittedly the common-law wife of Charles C. Lowe. The testimony was that she began living with Charles Lowe about a month prior to her marriage to Francesco. John A. Bricker, a bartender at the E & Z Bar in Akron, Ohio, and Mike Ruffo, a beer salesman, approached Ruth and asked her if she would like to meet and marry a nice young man. She was told by

1. See former Section 1101(a) (27) (A), Title 8, U.S.C.
   "The term 'nonquota immigrant' means—
   (A) an immigrant who is * * * the spouse of a citizen of the United States;"
   and former Section 1155, Title 8, U.S.C.

2. "The status of an alien who was lawfully admitted to the United States as a bona fide nonimmigrant and who is continuing to maintain that status may be adjusted * * * to that of an alien lawfully admitted for permanent residence * * * as a nonquota immigrant under section 1101(a) (27) (A) of this title, if (1) the alien makes application for adjustment, * * * (4) a * * * nonquota immigrant visa is immediately available to him at the time his application is approved, and (5) if claiming a nonquota status under section 1101(a) (27) (A) of this title he has been in the United States at least one year prior to acquiring that status."

them that the marriage was for convenience only and that shortly after it took place they could be divorced. They told her Francesco needed to be married in order to remain in this country. She stated that she was promised $500 but received only around $350. Bricker, the bartender, corroborated Ruth's testimony but stated that he thought she was to receive only $300.

Ruth met Francesco two weeks before the marriage and agreed to marry him. Ruth testified that Bricker and Ruffo intimated that a lawyer had agreed to take care of the divorce proceedings. Ruth claimed that she met Francesco only twice before they were married. Their first meeting was when she was introduced to him by Bricker and Ruffo, and the second time when they drove to one city where they could not be married because of some residence requirement. They were married on February 22, 1961, before a Municipal Judge in Wooster, Ohio. Ruth testified that Francesco's aunt and uncle told her that Francesco would have to live at her house "to make it look good." According to Ruth, Francesco slept on the couch while she slept in the bedroom with Charles Lowe. She denies ever having any sexual intercourse with Francesco. After two weeks, Francesco left of his own accord. Charles Lowe stated that he slept with Ruth during the two weeks that Francesco lived with them, that Francesco slept on the couch, and left voluntarily after about a week. Ruth stated that of the $350 she received, she spent $22.50 on a new watch, and $50 on a used car purchase by Charles Lowe. These expenditures were verified by letters from the dealers involved.

Francesco was the only witness to testify on his behalf. He testified that he met Ruth at a wrestling match in Akron, Ohio, in November or December, 1960. They dated several times after that and on their third date she agreed to marry him. Several days prior to the marriage they engaged in sexual intercourse in a Wooster, Ohio, park. After the marriage ceremony, a small reception was held at his uncle's house after which the uncle drove them to Ruth's home. They engaged in sexual intercourse that night. However, sometime that night Ruth told Francesco to sleep on the couch and he did so because he said she was drunk and he was afraid to disobey her. Thereafter Charles Lowe slept with Ruth while Francesco slept on the couch, although Francesco said he had intercourse with Ruth more than once after the marriage. Francesco testified that he and Ruth spent some time with his uncle after the marriage. He denied paying Ruth $350 or Bricker $100 and stated that he did not marry Ruth for the purpose of being able to remain in the United States, but that he married her to start a family life.

The Special Inquiry Officer found Francesco not to be a credible witness. "He had a motive in testifying as he did, namely, the desire to remain in the United States." He chose to believe the other witnesses whose stories were consistent and who had no motive to give false testimony. The Special Inquiry Officer found that the evidence in the case

"supports only one conclusion, namely, that the marriage was entered into with no intent to be a valid and subsisting one and that it was solely for the purpose of enabling the respondent (Francesco) to adjust his immigration status in the United States.

This marriage is deemed invalid for immigration purposes, and therefore the respondent (Francesco) was not entitled to nonquota status."

Consequently, he held that Francesco's adjustment of status to a permanent resident must be rescinded because Francesco was not entitled to nonquota status.

An appeal was taken to the Board of Immigration Appeals which was dismissed on June 26, 1964. The Board accepted the fact that Ruth and Charles Lowe were presently common-law husband and wife, but could not determine, and did not consider important, whether that relationship existed at the time of Ruth's ceremonial marriage to Francesco. The Board considered the issue presented

to be one of fact and affirmed the findings of the Special Inquiry Officer. "The adjustment of status will be rescinded because the respondent was not entitled to the nonquota status based upon a marriage to a citizen which is considered invalid for immigration purposes."

On July 10, 1964, Francesco received notice from the Immigration and Naturalization Service that he was required to leave this country before July 31, 1964. Following his failure to leave the country voluntarily by the specified date, Francesco was notified that he was subject to deportation as a nonimmigrant who had remained longer than permitted.[3] A hearing was held before a Special Inquiry Officer on October 22, 1964, to permit Francesco to show cause as to why he should not be deported. Francesco contested deportability on the ground that his adjustment of status was improperly rescinded and sought to present evidence to support this position. Francesco's position on this hearing and in all subsequent proceedings was that Ruth was the common-law wife of Charles Lowe at the time she entered into a ceremonial marriage with Francesco and that their marriage can be given no effect. Therefore he concludes that inasmuch as there was no marriage he could not be held to have entered into it solely to adjust his status to a permanent resident. The Special Inquiry Officer, on December 28, 1964, ruled that such a position was an attempt to relitigate the rescission proceedings and was barred by applicable regulations. The Special Inquiry Officer granted Francesco the alternative of voluntary departure in lieu of deportation but ordered "that if the respondent fails to depart when and as required, the privilege of voluntary departure shall be withdrawn without further notice or proceedings and the following order shall thereupon become immediately effective: the respondent shall be deported from the United States to Italy on the charge contained in the Order to Show Cause."

Francesco again appealed to the Board of Immigration Appeals. On May 19, 1965, the Board held that whether Francesco's marriage to a United States citizen was void ab initio because of an existing common-law marriage or whether it was not a bona fide marriage because entered into for the purpose of obtaining nonquota status would be of no consequence. In either event it would not entitle him to nonquota status by reason of a marriage to a citizen of the United States. Therefore Francesco was held to be a nonimmigrant visitor who, having overstayed his visa, was subject to deportation. Francesco sought reconsideration of the rescission of status and in response to his argument that he has been prejudiced by a finding that his marriage to a United States citizen was fraudulent the Board said in its decision:

"We agree with counsel that there is a preponderance of evidence that a common-law marriage existed between Ruth and Charles Lowe at the time the respondent allegedly married Ruth Lowe. Under the circumstances we will state for the record that there was no fraud in the inception on the part of the respondent (Francesco) when he allegedly married a United States citizen, because the said marriage was void ab initio."

Francesco filed his petition for review in Case No. 16658 in this Court on June 21, 1965. On November 27, 1965, while the case was pending on appeal, Francesco married Kathy Codispoti, a naturalized American citizen. Kathy's petition to accord Francesco "immediate relative"[4] status as the spouse of an Amer-

---

3. Section 1251(a) (2), Title 8, U.S.C.

4. Effective December 1, 1965, the Immigration and Naturalization Act was amended to substitute the "immediate relative" status under present Section 1151 (b), Title 8, U.S.C., for the previous "nonquota immigrant" status under the former Section 1101(a) (27) (A), Title 8, U.S.C. The change in terminology had no effect on the result of the granting of such a status. By virtue of being married to an American citizen Francesco

ican citizen was approved on September 13, 1966. On September 28, 1966, the Immigration and Naturalization Service notified Kathy that it intended to revoke Francesco's "immediate relative" status pursuant to Section 1154(c), Title 8, U.S.C., which provides:

" * * * no petition shall be approved if the alien has previously been accorded a nonquota or preference status as the spouse of a citizen of the United States * * * by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws."

The intended revocation was based upon Francesco's former marriage to Ruth.

On September 22, 1966, counsel for petitioner moved to remand the case in appeal No. 16658 to the Board of Immigration Appeals at Washington for the purpose of introducing new evidence concerning the marriage of Francesco to Kathy, an American citizen. Our Court granted the motion and the case was remanded to the Board of Immigration Appeals for further proceedings. We did not retain jurisdiction and consequently this terminated the appeal. After a hearing before the Board, counsel filed a supplemental petition on behalf of Kathy and Francesco for review in our Court. This petition was docketed as a new appeal under No. 17854. In the first appeal the petitioner was impaled on two horns of a dilemma. If his marriage to Ruth was not valid, as he claims, he had overstayed his visa. If he married for the sole purpose of gaining nonquota status, as found by the Special Inquiry Officer, his adjustment of status was subject to rescission. In either event he was subject to deportation. It is apparent that counsel now relies solely on the marriage to Kathy to save Francesco from the order of deportation. We consolidated the two appeals in order that the record in the first appeal might be considered as a part of the record on the second appeal.

Upon remand the District Director at Cleveland, Ohio, on November 18, 1966, rejected Francesco's arguments and ordered that his "immediate relative" status be revoked because:

"(A)s the previous hearing records and the decision by the Board on June 26, 1964, and May 19, 1965, clearly establish that the beneficiary (Francesco) has previously been accorded nonquota status as the spouse of a citizen of the United States by reason of a marriage determined to have been entered into for the purpose of evading the immigration laws when the beneficiary entered into his marriage with Ruth Moore aka Ruth Kasner, solely to obtain nonquota status." Written decision of November 15, 1966. See Section 1154(c), supra.

The Board of Immigration Appeals affirmed the findings and conclusions of the District Director and dismissed the appeal. The Board rejected Francesco's argument that the finding in the Board's earlier decision of May 18, 1965, that there was no fraud on Francesco's part when he married Ruth overcomes the Board's previous finding that the sole purpose of the marriage was to gain a preference under the immigration laws. The Board held that regardless of the legal consequences of the marriage of Francesco and Ruth in the jurisdiction in which it was entered into, the facts demonstrate its sole purpose was to secure to Francesco the status of a nonquota immigrant and that no valid or subsisting marriage was intended. The Board considered Francesco's intent in entering into the ceremonial marriage with Ruth as controlling.

On the appeal now before us counsel for the petitioners claims that the Immigration Service cannot rely on Section 1154(c), Title 8, U.S.C. as a ground for revoking the approval of the visa petition of Kathy which had been previously approved on September 13, 1966. He claims

---

was eligible to receive preference for a permanent resident visa ahead of the

oversubscribed list of Italians seeking to enter and live in this country.

that the Board is bound by its statement in its decision of May 19, 1965, that

"(u)nder the circumstances we will state for the record that there was no fraud in the inception on the part of the respondent (Francesco) when he allegedly married a United States citizen, because the said marriage was void ab initio."

In the alternative counsel claims that under Section 241(f) [5] (Section 1251(f), Title 8, U.S.C.) Francesco cannot be deported because he is now the husband and parent of United States citizens.

The government in its brief on this appeal (No. 17854) raises but does not argue the question of jurisdiction of this Court to hear the appeal. Both parties assert that we do have jurisdiction and ask us to so find. Section 1105a(a), Title 8, U.S.C.[6] defines jurisdiction. Decisions of the Courts of Appeals on the interpretation of this statute are in conflict. The Second, Fifth and Eighth circuits have taken a more restrictive view and hold that not all orders and decisions of the Immigration Service are reviewable by the Courts of Appeals even though they may affect the deportable status of the petitioner.[7]

Our Court and the Seventh Circuit have held that initial jurisdiction exists in the Court of Appeals to review actions or decisions of the Immigration Service, which if decided in favor of the petition-

er would have the effect of nullifying outstanding deportation orders.[8] See also Foti v. Immigration Service, 375 U.S. 217, 84 S.Ct. 306, 11 L.Ed.2d 281; Giova v. Rosenberg, 379 U.S. 18, 85 S.Ct. 156, 13 L.Ed.2d 90, in which the Supreme Court has taken a more liberal view of the jurisdiction of Courts of Appeals in reviewing orders of the Immigration Service.

The decisions of the Immigration Service which the petitioners seek to review are, in substance, part of the final order of deportation and we hold that we have jurisdiction to determine the appeal on its merits.

We come now to the merits of the petitioners' claims. The evidence that Francesco married Ruth Moore with intent to evade the immigration laws and for the sole purpose of gaining nonquota status in order to become a permanent resident of the United States is overwhelming. The finding of the Special Inquiry Officer of March 13, 1964, "that the marriage was entered into with no intent to be a valid and subsisting one and that it was solely for the purpose of enabling the respondent to adjust his immigration status in the United States," is supported by substantial evidence. In affirming the Special Inquiry Officer the Board said in its decision of June 26, 1964, "It is concluded that the marriage entered into by the respondent was not

5. "(f) The provisions of this section relating to the deportation of aliens within the United States on the ground that they were excludable at the time of entry as aliens who have sought to procure, or have procured visas or other documentation, or entry into the United States by fraud or misrepresentation shall not apply to an alien otherwise admissible at the time of entry who is the spouse, parent, or a child of a United States citizen or of an alien lawfully admitted for permanent residence."

6. "The procedure prescribed by, and all the provisions of sections 1031–1042 of Title 5, (Presently Sections 2341–2352, Title 28, U.S.C.) shall apply to, and shall be the sole and exclusive procedure for, the judicial review of all final orders of deportation heretofore or hereafter made

against aliens within the United States pursuant to administrative proceedings under section 1252(b) of this title * * *."

7. Tai Mui v. Esperdy, 371 F.2d 772 (C.A. 2), cert. den. 386 U.S. 1017, 87 S.Ct. 1372, 18 L.Ed.2d 454; Samala v. Immigration and Naturalization Service, 336 F.2d 7 (C.A.5); Mendez v. Major, 340 F.2d 128 (C.A.8).

8. Roumeliotis v. Immigration and Naturalization Service, 304 F.2d 453 (C.A.7), cert. den. 371 U.S. 921, 83 S.Ct. 288, 9 L.Ed.2d 230; Blagaic v. Flagg, 304 F.2d 623 (C.A.7); Skiftos v. Immigration and Naturalization Service, 332 F.2d 203 (C.A.7); Melone v. Immigration and Naturalization Service, 355 F.2d 533 (C.A.7); Talavera v. Pederson, 334 F.2d 52 (C.A.6).

a bona fide marriage but was entered into solely to obtain nonquota status for the respondent and must be deemed invalid for immigration purposes."

In its decision affirming the Special Inquiry Officer's order of deportation, the Board said:

"Regardless of whether the respondent's marriage to a United States citizen was void ab initio because of an existing common-law marriage of his citizen wife or whether it was not a bona fide marriage because entered into solely for the purpose of obtaining nonquota status for the respondent, the fact remains that in either event the respondent was not entitled to nonquota status based upon a marriage to a citizen of the United States."

This is the pertinent part of the decision. What the Board said with reference to there being no fraud in the inception of the marriage was dicta and was not a necessary element of deciding the issues before it. Furthermore, the Board did not say that the petitioner did not go through with a marriage ceremony with Ruth Moore and that all of the facts with relation thereto as shown by the evidence were not true. What he did with respect to the marriage was done with the intent to gain nonquota status and not for the purpose of entering into a continuing bona fide marriage. It makes little difference then whether the marriage turned out to be a legal one, valid in law, or an invalid one, unenforceable because the wife had a husband living. He intended to use the act of marriage to gain nonquota status. He accomplished his purpose and then got a divorce. He held his adjustment of status until the sham was discovered and it was necessary to bring proceedings against him to rescind the adjusted status. The petitioner's intent is the essential element of the case.

See Garcia-Gonzales v. Immigration and Naturalization Service, 344 F.2d 804 (C.A.9), cert. den. 382 U.S. 840, 86 S.Ct. 88, 15 L.Ed.2d 81, in which setting aside a plea of guilty, entering a plea of not guilty and dismissing the information did not wipe out or expunge the conviction upon which the deportation order rested.

The crux of the matter is well stated by the Board in its decision on remand.

"We are unable to follow counsel's reasoning that a marriage which is void because of a prior existing marriage but which was entered into for the same purpose of evading the immigration laws and where no bona fide husband and wife relationship ever existed, or was ever intended, stands in any better position."

■ We conclude that Section 204(c) of the Immigration Act (Section 1154(c), Title 8, U.S.C.) is applicable and that Kathy's petition for immediate relative status must be revoked "by reason of a marriage determined to have been entered into for the purpose of evading the immigration laws."

■ Counsel's reliance on Section 241(f) of the Immigration and Naturalization Act is misplaced. Counsel for the government claim that this issue cannot now be raised because it was not raised in the administrative proceedings below. Without passing on the merits of this contention, we hold that the section is not applicable to the facts of the case at bar.

The section obviously applies to aliens who were excludable at the time of their entry by reason of some fraud or misrepresentation by which they gained entry. Francesco entered the United States lawfully as a visitor without fraud or misrepresentation. He was not excludable at the time of his entry. He did not become excludable until he over-stayed his visa.

Immigration and Naturalization Service v. Errico, 385 U.S. 214, 87 S.Ct. 473, 17 L.Ed.2d 318, from which counsel for petitioners quotes extensively, is not in point and does not support the claim of Francesco that he should be exempt from deportation under Section 241(f). The opinion of the Supreme Court concerns two separate cases involving one Errico, respondent, and the other Scott, petitioner.

Errico falsely represented that he was a skilled mechanic with specialized experience in repairing foreign automobiles. On the basis of this misrepresentation, he was granted first preference quota status and entered the United States with his wife in 1959. Thereafter a child was born in the United States. This child became a United States citizen at birth.

Scott, a native of Jamaica, contracted a marriage with a United States citizen by proxy solely for the purpose of obtaining nonquota status for entry into the United States. She never lived with her husband and never intended to do so. After her admission in 1958 she gave birth to an illegitimate child who became an American citizen at birth.

Each of these parties entered the United States as immigrants by means of false and fraudulent representations. Each became the parent of a child who was a citizen of the United States at birth. Aside from the misrepresentations by which they obtained nonquota status, each would have been "otherwise admissible" under regular quota regulations. The Court held that Section 241(f) applied to them and exempted them from deportation. These cases are clearly distinguishable on their facts from the case at bar.

The final order of deportation is affirmed and the petitions for review are dismissed.

## On Rehearing

ORDER.

Upon consideration of the petition for rehearing herein, it was ordered that the case

"be remanded to the Board of Immigration Appeals with instructions to request the Special Inquiry Officer to state what standard of proof he applied to the facts concerning the rescission of Francesco's permanent residence status, by reason of his marriage to Ruth Moore and whether or not he finds by clear, unequivocal and convincing evidence (Woodby v. Immigration [and Naturalization] Service, 385 U.S. 276 [87 S.Ct. 483, 17 L.Ed.2d 362] 'that the marriage was entered into with no intent to be a valid and subsisting one and that it was solely for the purpose of enabling the respondent (Francesco) to adjust his immigration status in the United States' "

and to report back to the Court, the Court retaining jurisdiction.

In accordance with the order of remand, both the Board of Appeals and the Special Inquiry Officer have made further reports which are certified to the Court by the Department of Justice, Immigration and Naturalization Service, and which are hereby made part of the record in the case.

The Special Inquiry Officer reports,

"Upon a full and fair reconsideration and re-evaluation of that evidence, I specifically find that it was established by clear, unequivocal and convincing evidence that the marriage of the respondent to Ruth Moore was entered into with no intent to be a valid and subsisting one and that it was solely for the purpose of enabling the respondent to adjust his immigration status in the United States."

The Board also found that the order of rescission was established by clear, unequivocal and convincing evidence and reaffirmed its prior order of June 26, 1964, dismissing the appeal in the rescission proceedings.

Upon consideration of the petition for rehearing the reports of the Special Inquiry Officer and the Board of Immigration Appeals, made a part of the record herein, and the additional argument of counsel for the petitioner on the petition for rehearing,

It is ordered that the petition for rehearing be and it is hereby denied.