Fidel GALLEGO, Petitioner,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.

No. 86–C–611–C.

United States District Court,
W.D. Wisconsin.

Nov. 16, 1987.

Teresa M. Elguezabal, LaFollette & Sinykin, Madison, Wis., for petitioner.

Sheree Gowey, Asst. U.S. Atty., Madison, Wis., for respondent.

CRABB, Chief Judge.

This is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] Petitioner, who is presently incarcerated at the Atlanta Federal Penitentiary, alleges that he has been detained by respondent since July 1986, in violation of his constitutional rights.[2] Petitioner remains in the custody of respondent.

This case was referred to the United States Magistrate, and on February 27, 1987, the magistrate recommended that the petition be denied with leave to reinstate unless on or before May 1, 1987 respondent apprised petitioner why his deportation was not practicable or proper under 8 U.S.C. § 1227(a). This case is before this court on petitioner's objections to the magistrate's report and recommendation. On June 12, 1987, by order of this court, I held that the Immigration and Nationality Act does not authorize indefinite or permanent detention of excludable aliens. By that order, respondent was requested to supplement the record on the issues discussed below.

1. The district court has jurisdiction to review orders of exclusion initially under 8 U.S.C. § 1105a(b) through habeas corpus.

2. Petitioner was incarcerated at the Trempeleau County Jail, at Whitehall, Wisconsin, but was transferred to the Federal Penitentiary in Atlanta, Georgia, on May 12, 1987.

The magistrate's report included a section labelled "Factual Background" which included proposed findings of fact based upon certified copies of documents from respondent's file on petitioner that were submitted with the response to the petition. I adopted some of these findings as the court's own, and in the June 15, 1987 order, made additional findings based upon documents contained in the record. Now I make additional findings based upon the documents submitted in response to the request to supplement the record.

## FACTS

Petitioner, a Cuban citizen, arrived by boat from Mariel, Cuba at Key West, Florida on June 11, 1980.

Petitioner was paroled into the United States on September 24, 1980, pursuant to section 212(d)(5) of the Immigration and Nationality Act (8 U.S.C. § 1182(d)(5)).[3]

The records of the Chicago Department of Police indicate that petitioner was arrested for theft or retail theft on the following dates: May 17, 1981; September 23, 1981; April 10, 1982; July 20, 1982; and September 10, 1983. It is not clear from the record what disposition was made of these charges.[4]

Petitioner was arrested for burglary on June 6, 1984. On July 5, 1984, the State's Attorney for Cook County, Illinois, filed an information charging petitioner with residential burglary, possession of burglary tools and theft of property with a value of more than $300 on June 6, 1984.

On January 10, 1985, petitioner entered a plea of guilty to the charge of residential burglary. On the same date, judgment was entered on the conviction and petitioner was sentenced to the custody of the Illinois Department of Corrections for four years, with credit time from June 6, 1984.

On August 1, 1985, respondent sent a Notice of Action to the warden of the Logan Correctional Center in Lincoln, Illinois, where petitioner was apparently incarcerated. The Notice of Action advised the warden that respondent had initiated an investigation to determine whether petitioner was entitled to remain in the United States, and requested that respondent be notified at least thirty days prior to petitioner's release.[5]

On July 10, 1986, petitioner was served with notice that the parole issued to him on September 24, 1980, was terminated and that a further inspection and hearing would be conducted to determine whether he was admissible into the United States. The notice indicated that petitioner was believed to be excludable from the United States pursuant to the Immigration and Nationality Act exclusion sections 212(a)(9), (14), and (20) [8 U.S.C. § 1182(a)(9), (14), and (20) ].[6]

Petitioner filed a petition for habeas corpus with this court on August 22, 1986. At that time, petitioner was incarcerated in

---

**3.** 8 U.S.C. § 1182(d)(5) provides that the Attorney General may in his discretion temporarily parole an alien applying for admission to the United States, under such conditions as he may prescribe for emergent reasons or for reasons deemed strictly in the public interest.

**4.** This finding is based on a criminal history sheet issued by the Chicago Department of Police and certified as a copy from respondent's file. The abbreviations used on this sheet are not explained, and it is possible that the sheet may indicate more arrests than I have found.

**5.** It is not clear from the record when petitioner was released from state custody or when his detention by respondent commenced. The magistrate requested this information from the Assistant United States Attorney assigned to the case, but she was unable to provide it.

**6.** 8 U.S.C. § 1182(a) provides:
Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States.
\* \* \* \* \* \*
(9) Aliens who have been convicted of a crime involving moral turpitude....
\* \* \* \* \* \*
(14) Aliens seeking to enter the United States, for purpose of performing skilled or unskilled labor (without a labor certificate from the Department of Labor)....
\* \* \* \* \* \*
(20) [A]ny immigrant who at the time of application for admission is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter....

the Trempealeau County Jail at Whitehall, Wisconsin, in the custody of respondent.

On October 10, 1986, in Chicago, Illinois, an exclusion hearing was held pursuant to the Immigration and Nationality Act section 235(b) [8 U.S.C. § 1225(b)]. At the hearing, petitioner was provided with an application form for asylum and withholding of deportation. Petitioner was provided with a list of free legal service attorneys for the Chicago area.[7] Petitioner was informed that he had a right to be represented at no expense to the government, as required by 8 C.F.R. § 236.2. This information was provided to petitioner at the hearing, as the following conversation indicates:

Q. At this hearing you have a right to be represented by an attorney at no expense to the government, at your own selection or you may speak for yourself. What do you wish to do?

A. The same.

Q. Alright [sic]. did you get a list of free legal service attorneys for the Chicago area?

A. No.

Q. Will you please hand him a list of free legal service attorneys....

\* \* \* \* \* \*

Q. Alright. In case you need any assistance a list of free legal services attorney there they may give you assistance. And if you wish, you may ask them to represent you and I will hear from you next Friday, on October 17, 1986. Do you understand?

A. Yes.

Q. Do you understand what has happened?

A. Yes.

Q. I would prefer that you have a lawyer or someone help you to fill out those papers before you submit them. Do you understand?

A. Yes.

Q. But I cannot order you to get a lawyer if you don't want to. So I will give you a little time to think it over.

A. Okay.

Q. This hearing is continued to October 17, 1986 at 1:00 o'clock. You are to complete the asylum application and also to decide whether or not you wish to have an attorney represent you.

Petitioner was provided with a copy of Form I-618, in Spanish, entitled Written Notice of Appeal Rights. Form I-618 details the timing for appeal of the immigration judge's determination of excludability (10 days for an oral decision and 13 days if the judge issues a written decision). The form also explains the procedure for waiver of a $50.00 appeal fee for indigents. The judge continued the hearing until the following week, to allow petitioner to complete the application for asylum, and to seek the services of an attorney.

On October 17, 1986, at the continued hearing, the following exchange took place between petitioner and the immigration judge:

A. And I also gave you an opportunity if you wished to have the services of an attorney. Do you have a lawyer to represent you?

A. I talked to them but they couldn't help me.

Q. So you are going to proceed without a lawyer?

A. I have no other choice here. I haven't been able to find one.

Q. Alright [sic]. What we will do now is we'll forward your application for asylum to the State Department for their response. We will reschedule your case when we have the response back from the State Department. Do you understand?

A. Yes.

Q. This hearing is continued. You will be notified to return after we receive a response from the State Department.

A. Okay.

7. I.N.S. regulations provide that an alien shall be advised of the availability of free legal service programs located in the district where his deportation hearing will be held. 8 C.F.R. § 242.1(c).

Q. Meanwhile, if you obtain the services of an attorney you are always welcome to have an attorney here if you can obtain an attorney to represent you.

A. Do you understand?

Q. Understand it.

The judge continued the hearing in order to await a State Department response to petitioner's application for asylum.

The exclusion hearing was held on December 5, 1986. The hearing was conducted in English with the assistance of an interpreter who translated from English to Spanish and vice versa. With respect to his right to counsel, the following dialogue took place:

Q. And do you wish to proceed now without an attorney? Is that correct? You want to speak for yourself?

A. Yes. I can't find out a lawyer. Nobody help me.

Q. Alright [sic].

A. And I call up on telephone you know lawyer, they tell me their [sic] busy.

Q. So you are telling me all the attorneys that you called they have advised you that they are too busy and they will not represent you?

A. Yes. All.

Q. So you understand that under those circumstances that I have no choice. I'll have to let you speak for yourself. Are you willing to speak for yourself?

A. Yes.

The immigration judge found petitioner excludable on all three grounds of exclusion (see footnote 6) by clear, convincing and unequivocal evidence. The immigration judge denied petitioner's application for asylum and witholding of deportation, and ordered that petitioner be excluded from the United States to Cuba.

At the close of the immigration proceeding, the judge asked both parties whether they wished to reserve appeal.

Q. If you feel my decision is not just you may appeal to the Board of Immigration Appeals in Falls Church, Virginia within the next five days or you may waive appeal. What do you wish to do?

A. No, well, I—if they decide that they are not going to approve my political asylum then not to let the thing keep going—I mean so that they don't bother me anymore.

Q. Do you accept the decision and waive appeal?

A. Yes, I am not going to appeal.

[the petitioner then stated that the government was going to do whatever it wanted anyway].

Q. From the government?

A. The government accepts the decision and waives appeal.

■ The immigration judge customarily closes all immigration proceedings by asking both parties whether they wish to reserve appeal. This practice is employed, even if the government prevails, because some cases may involve multiple charges of excludability or deportability, and the government may prevail on some and lose on others. Thus, the government may wish to appeal those charges that were dismissed. The immigration judge's inquiry on December 5, 1986, whether the government wished to reserve appeal, even though the government prevailed on all charges of excludability, was in conformity with this practice.[8]

At the present time the governments of the United States and Cuba do not have a reciprocal immigration agreement. The Cuban government unilaterally suspended such an agreement on May 10, 1985. Because no such agreement is in effect it is not practical or proper to deport petitioner at this time.

Respondent has promulgated a Cuban Review Plan. The plan provides for periodic review (annually) of the Mariel Cubans

---

**8.** Petitioner objects to the admission of portions of the affidavit of Mr. Milton C. Jossey, attorney for the Immigration and Naturalization Service, who represented the INS during the proceeding on December 5, 1986, as inadmissible on the grounds of hearsay and speculation. However, I find that Mr. Jossey's affidavit regarding the immigration judge's inquiry regarding the appeal reservation, is evidence of a routine practice, relevant to prove that the conduct was in conformity with habit or routine practice. Rule 406, Federal Rules of Evidence.

pursuant to section 212(d)(5)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1182(d)(5).

## OPINION

### 1. Respondent's Waiver of Appeal: Exhaustion

■ Petitioner contends that he should be permitted to raise objections to respondent's decision to terminate his parole and find him excludable. Respondent contends that petitioner has not exhausted his administrative remedies, as required under 8 U.S.C. § 1105a(c), which provides that an order of deportation or exclusion shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of right under the immigration laws and regulations. Petitioner contends that the respondent's explicit waiver of appeal at the close of the immigration proceeding effects a waiver of the exhaustion requirement. In the June 12, 1987 order, I asked the respondent to supplement the record on the question whether respondent waived its right to appeal the immigration judge's determination that petitioner is excludable, and if the respondent had waived its right to appeal, what the effect of such a waiver would be.

At the close of the December 5, 1986 immigration proceeding, the judge asked both the respondent and the petitioner whether they wished to reserve appeal. Respondent waived its right to appeal. The immigration judge's appeal inquiry is a customary practice, which often serves to allow the government to reserve appeal when some charges of excludability or deportability have been sustained, but other charges have been dismissed. Accordingly, I do not accord any particular significance to the respondent's waiver of appeal. I find that the waiver of appeal by respondent at the conclusion of petitioner's exclusion hearing does not effect a government waiver of the exhaustion of remedies requirement of 8 U.S.C. § 1105a(c), particularly given the fact that respondent prevailed on all of the charges. I need not reach the issue whether the government may be permitted to waive a statutory requirement of exhaustion, even though exhaustion is a prerequisite to jurisdiction.

### 2. Petitioner's Waiver of Appeal: Exhaustion

■ As noted, petitioner contends that he should be permitted to raise objections in this court to respondent's decision to terminate his parole and find him excludable. However, this court may not entertain review where the petitioner has failed to take an administrative appeal. *Mir v. Rosenberg*, 390 F.2d 627 (9th Cir.1967) (district court had no jurisdiction to review where alien failed to take an administrative appeal); *Fragale v. Rogers*, 175 F.Supp. 658 (E.D.N.Y.1959) (alleged citizen had not exhausted her administrative remedies by taking appeal from special inquiry officer's decision in exclusion proceeding).

Petitioner seeks to avoid the consequence of his apparent waiver of the right to appeal by contending that the waiver was not made knowingly. He argues that as a result of his having been forced to proceed without the assistance of legal counsel, he was precluded from exercising considered judgment throughout his hearing and at the time he waived his right to appeal. Resolution of this issue requires an initial analysis of the question whether petitioner was denied his right to representation. *See United States v. Mendoza–Lopez*, CR 85–L–06 (Neb., Feb.1985); *aff'd* 781 F.2d 111 (8th Cir.1985); *aff'd* — U.S. —, 107 S.Ct. 2148 (1987) (aliens did not knowingly and intelligently waive their rights to appeal when were not fully informed of their rights during a deportation hearing; although aliens did not specifically raise the issue of the waiver of appeal, court found that they raised the issue of "fundamental fairness," and in light of the deprivation of their rights at the proceeding, the court found it "inconceivable that they would so lightly waive their rights to appeal").

### a. Right to counsel.

■ An alien who petitions for admission to the United States has such statutory rights as Congress grants. *Augustin*

*v. Sava,* 735 F.2d 32, 37 (2d Cir.1984).[9] The statutory and regulatory provisions of the Immigration and Nationality Act create substantive entitlements to government benefits, or to constitutionally protected liberty or property interests. *Id.,* at 37, *citing Wolff v. McDonnell,* 418 U.S. 539, 577, 94 S.Ct. 2963, 2985, 41 L.Ed.2d 935 (1974) (constitutionally protected liberty or property interest may have their source in positive rules of law creating a substantive entitlement to a particular government benefit).

■ An alien who seeks entry is entitled to a hearing before an immigration judge. 8 U.S.C. § 1226(a). Section 1362 of Title 8 of the United States Code establishes an alien's right to counsel at that hearing. Pursuant to that section the right to counsel is not a right that the government must finance. 8 U.S.C. § 1362 (alien has the right to counsel at an exclusion hearing, but he does not have a right to have counsel appointed at government expense.) *Escobar Ruiz v. I.N.S.,* 787 F.2d 1294 (9th Cir.1986); *Perez–Perez v. Hanberry,* 781 F.2d 1477 (11th Cir.1986). Unlike a criminal defendant an alien does not have a right to counsel arising under the Sixth Amendment to the Constitution.

■ An alien may waive his or her statutory right to counsel. *See, e.g., Delgado v. I.N.S.,* 804 F.2d 261 (4th Cir.1986) (court found that the petitioners' positive response to the immigration judge's question whether they wanted to go ahead without counsel effected a waiver of counsel, even though the petitioners had erroneously been provided a list of free legal services in the Phoenix area, when the hearing was held in Los Angeles).

In *Samala v. I.N.S.,* 336 F.2d 7 (5th Cir.1964), the petitioner, who had expressly waived his right to appeal a deportation order to the Board of Immigration Appeals, contended that he was denied the assistance of counsel in the deportation hearing, and thus was not afforded a real opportunity to pursue his administrative remedies. The court found that the alien had effectively waived his right to counsel after he had been informed that he had a right to counsel, at no expense to the government, and he had responded affirmatively when asked if he wished to proceed without a lawyer, despite his statement that he could not afford the fee for a lawyer. The court found that by informing the alien of his right to appeal, and giving him a copy of the appeal form, the immigration judge "made it emphatically clear that [the alien] had a right to appeal." *Id.* at 11. The court concluded that the alien had not demonstrated a preclusion of his administrative remedies because of denial of counsel. *Compare Augustin v. Sava,* 735 F.2d 32 (2d Cir.1984) (alien's procedural rights were violated where the attorney had withdrawn without the alien's knowledge, the translation during the proceeding was nonsensical, the accuracy and scope of the hearing translation was subject to grave doubt, the alien misunderstood the nature and finality of the proceeding, and a credible claim which developed following translation was not reviewed).

■ In this case, petitioner was given a list of free legal services. His hearing was continued to allow him from October 10 to October 17, and then again from October

---

9. A deportation hearing, where an alien who has been apprehended inside the United States faces expulsion, must comply with due process. *See* 8 U.S.C. § 1251–1258 (provisions relating to deportation). The alien's statutory right to retain counsel, therefore, is defined and guaranteed by the Fifth Amendment due process rights. By contrast, exclusion hearings, where, for example, an alien who has been apprehended at an airport or at the border faces expulsion, provide fewer procedural protections. *See* 8 U.S.C. § 1221–1230 (provisions relating to exclusion). In this case, the petitioner is "excludable" by fiction of the "entry doctrine". Pursuant to 8 U.S.C. § 1182(d)(5), petitioner was paroled into the United States. Upon revocation of parole, the alien who, like deportable aliens, has been physically present in the United States, is instead treated as an excludable alien who is "standing at the border." 8 U.S.C. § 1182(d)(5) provides that in the event of revocation of parole, the alien shall "be dealt with in the same manner as that of any other applicant for admission to the United States." Thus, the alien is granted unofficial physical entry into the United States, without acquiring the procedural protections afforded a deportable alien.

17 to December 5 to locate an attorney. Petitioner stated explicitly at the October 17 hearing that he would proceed without an attorney. At that time, the immigration judge informed him that he could continue to seek legal assistance, and that he was entitled to an attorney at the next hearing on December 5. Again on December 5, petitioner stated that he would proceed without an attorney. I find from this that petitioner knowingly and intelligently waived his right to counsel.

### b. Intelligent Waiver of Appeal.

 At the close of the exclusion hearing, petitioner stated expressly that he waived his right to appeal. He contends, however, that he waived appeal only because he perceived further efforts to be futile, and that under these circumstances, his waiver was not intelligent. Petitioner was not represented by counsel during the proceeding, and he experienced frustration when he attempted to express himself in English (although he recognized that a translator was available at all times). Petitioner alleges that he was confused when the immigration judge offered him the option to waive appeal immediately, or within five days, whereas the form for appeal advised petitioner to appeal within ten to thirteen days. After petitioner waived appeal he stated that the government would do as it pleased regardless of his appeal. In sum, petitioner perceived that any further efforts would be futile.

In *United States v. Mendoza–Lopez*, CR 85–L–06 (Neb., Feb. 18, 1985); *aff'd* 781 F.2d 111 (8th Cir.1985); *aff'd* ── U.S. ──, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987), the United States Supreme Court held that a waiver of appeal must be made intelligently. In that case, several aliens stood trial for violation of 8 U.S.C. § 1326, which imposes criminal sanctions on any alien who has been excluded and deported, and subsequently re-enters the United States. At their criminal trial on charges of illegal reentry, the defendants collaterally attacked their prior deportation adjudication and the procedure utilized by an immigration judge in reaching the deportation conclusion.

The defendants had been continuously present in the United States for a period exceeding seven years and were eligible to apply for suspension of deportation. The defendants contended that the court's failure to apprise them of this opportunity, particularly when they were unrepresented, rendered their waivers of suspension of deportation and of appeal invalid.

The district court noted that although the immigration judge had technically complied with an administrative code provision requiring the immigration judge to inform the respondents of their apparent eligibility to apply for suspension of deportation, he had failed to comply with the purpose of the requirement: to afford respondents an opportunity to understand their options and to make an intelligent choice given the alternatives available to them. *Id.*, at 11. Further, the district court found that the immigration judge offered the defendants "at most only a few minutes to decide whether they wished to appeal...." *Id.* Again, the court found that this procedure complied with the technical requirements of the applicable regulation, but held that it was inconceivable that the defendants would waive their rights to appeal so lightly, if they had been fully apprised of the ramifications of such a choice. 107 S.Ct. at 2151, *citing App. to Pet. for Cert.* 23a.

The Supreme Court affirmed the district court's conclusion that a waiver of appeal must be made knowingly and intelligently. The defendants' lack of understanding regarding the suspension of deportation fatally tainted their waiver of appeal. Had the defendants been fully informed of their rights during the hearing, they would not have waived their right to appeal so lightly and quickly.

I find no evidence in this case to support petitioner's contention that his waiver of appeal was not made intelligently. I have determined that petitioner was informed of his right to counsel, and that petitioner waived that right. Petitioner was not hindered by the language difference, as a translator was present at all times. The immigration judge made it clear that he

had a right to appeal. Although the timing of the appeal may have been misleading, the *availability* of the appeal was perfectly clear. Well in advance of the final exclusion hearing, petitioner was provided with an appeal form in Spanish, which also detailed the procedure for a waiver of the $50.00 appeal fee by indigent aliens. It is unfortunately the case, that unrepresented litigants often feel overwhelmed or defeated; in itself, this does not render a waiver invalid. Accordingly, I conclude that petitioner waived his right to appeal and has failed to exhaust his administrative remedies.

### 3. Petitioner's Detention

 In the June 12, 1987 order, I held that the Immigration and Nationality Act does not authorize indefinite or permanent detention of excludable aliens, and that the government must demonstrate that petitioner's detention is temporary by showing either a) that it is actively pursuing negotiations for petitioner's return to Cuba or his release in some other country, or alternatively b) that it has procedures for periodic review of petitioner's eligibility for parole.

On June 12, 1987, I found that there was no indication in the record that respondent had made any attempts to deport petitioner to Cuba or to any other country, or that it intends to make such attempts in the future. Further, I found that there was no indication in the record that petitioner's eligibility for parole would be reconsidered periodically. I asked the respondent to supplement the record so that I could make a determination whether petitioner's continued detention constitutes an abuse of discretion.

In response to the June 12, 1987 order, respondent has submitted a Cuban Review Plan. The plan provides for annual review of the Mariel Cubans pursuant to section 212(d)(5)(A) of the Immigration and Nationality Act, [8 U.S.C. § 1182(d)(5)(A)], relating to parole of detainees. Because respondent has demonstrated that a plan is in place for periodic review of Mariel Cubans at the Atlanta Penitentiary, I find that respondent has shown that petitioner's detention is temporary. Accordingly, I find that respondent has not abused its discretion. Respondents are temporarily detaining petitioner and will review his status annually pursuant to review by the Cuban Review Plan in place at the Atlanta Penitentiary.

### ORDER

IT IS ORDERED that petitioner's petition for a writ of habeas corpus is DENIED for his failure to show that his detention is in violation of any provision of the United States Constitution or the laws of the United States.